Robert M. TAYLOR, Plaintiff,

Insurance Co. of North America, Intervenor-Appellee,

v.

BUNGE CORPORATION, Defendant-Appellant.

No. 86–3713.

United States Court of Appeals, Fifth Circuit.

May 31, 1988.

Jeffrey Raines, James Hanemann, Jr., Hanemann & Assoc., New Orleans, La., for defendant-appellant.

Donald T. Giglio, New Orleans, La., for intervenor-appellee.

Before GOLDBERG, JOHNSON and WILLIAMS, Circuit Judges.

GOLDBERG, Circuit Judge:

Bunge Corporation ("Bunge") employed Plaintiff, Robert M. Taylor, as a longshoreman. While Taylor was working on a barge owned by Bunge (the "Vessel"), a mule rope broke and hit him in the leg, causing a compound fracture and some permanent loss of function. Taylor received worker's compensation benefits of $143,-938.34 from Bunge's worker's compensation insurer. Taylor then sued the Vessel in negligence under § 33(a) of the Longshoremen's and Harborworker's Compensation Act, 33 U.S.C. § 933(a) (the "LHWCA"). Subsequently, Taylor settled with the Vessel for $700,000.00 in addition to the worker's compensation benefits already paid. Bunge's insurers are now doing battle over who should bear the burden of Taylor's worker's compensation benefits.

In *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), the Supreme Court stated the general rule that an employer who has paid LHWCA benefits has a lien, against any tort recovery from third parties, in the amount of the benefits paid. *Id.* at 530 n. 5, 103 S.Ct. at 2547 n. 5. In *Peters v. N. River Ins. Co. of Morristown, N.J.*, 764 F.2d 306 (5th Cir.1985), we further held that an injured longshoreman and a third party defendant cannot settle around the employer's lien. Today we need only decide whether this principle survives when employer wears two hats as

employer and as vessel. We rely on *Jones & Laughlin* for the proposition that LHWCA § 5(b)[1] gives a vessel which employs its own longshoremen two complete sets of clothes, one to wear in its capacity as employer and the other to wear in its capacity as vessel. 462 U.S. at 531, 103 S.Ct. at 2547. Therefore the rule stated in *Peters,* does not conflict with the principle that an insurer may not subrogate against its own insured. Accordingly we AFFIRM.

## I. FACTS

### A. *The Parties and Their Hats*

Taylor: an injured longshoreman.

Bunge: Taylor's employer, and owner of the Vessel.[2]

The Vessel: a grain barge owned by Bunge, upon which Taylor was injured.

Insurance Company of North America ("INA"): the carrier of Bunge's worker's compensation policy (the "Comp Policy").[3]

### B. *A Settlement, But at Whose Expense?*

Taylor received worker's compensation payments of $143,938.34 from INA under the Comp Policy. Taylor then brought a negligence action against the Vessel under LHWCA § 33(a),[4] as permitted by LHWCA § 5(b).[5] The Vessel settled Taylor's claims for $700,000.00 over and above the worker's compensation benefits already paid.[6]

INA now seeks to enforce the employer's lien against Taylor. The Vessel opposes this claim, arguing that because Bunge, as owner of the Vessel, has agreed to indemnify Taylor against INA's subrogation claim, INA is actually suing its own insured, Bunge, which is prohibited by Louisiana and federal law.

### C. *The Stakes*

If we determine that the compensation insurer can enforce the employer's lien against the settlement fund, INA, as worker's compensation insurer will be reimbursed for the $143,938.34 in worker's compensation benefits paid out of the Comp Policy. The Vessel will be liable for a total of $843,928.34.[7] If, on the other hand, the employer's lien is defeated, INA, as worker's compensation insurer, will remain liable for the $143,938.34 already paid, and the Vessel will be liable for the remaining $700,000.00.[8]

This dispute is, therefore, a dispute between INA and the Vessel[9] over who must bear the burden of the $143,938.34 in worker's compensation benefits already paid.

### D. *The Outcome Below*

The district court ruled that INA was not suing its own insured, but was instead suing Taylor; Bunge was only involved by virtue of its contractual agreement to in-

---

1. 33 U.S.C. § 905(b).

2. New York Marine Managers, Bunge's excess liability insurers, have stepped into Bunge's shoes during this litigation to oppose INA's claim against the settlement fund.

3. INA is also Bunge's primary liability carrier. The liability policy has a limit of $500,000.00 which will be exhausted by the settlement under either possible outcome of this case.

4. 33 U.S.C. § 933(a).

5. 33 U.S.C. § 905(b).

6. The settlement agreement included a clause under which Bunge, as owner of the Vessel, agreed to indemnify Taylor for any attempt by the worker's compensation insurer to exercise employer's lien for reimbursement of the worker's compensation benefits already paid.

7. This $843,938.34 in liability would then be divided as follows. INA, as primary liability insurer of the Vessel would be liable up to the $500,000.00 limit of the liability policy. Bunge's excess insurers would be liable for the remainder of $343,938.34.

8. This $700,000.00 in liability would then be divided as follows. INA, as primary liability insurer of the Vessel would be liable up to the $500,000.00 limit of the policy. Bunge's excess insurers would pay the remaining $200,000.00.

9. Financial responsibility for Vessel negligence lies with Bunge. Since, under either proffered interpretation of the LHWCA, the settlement exceeds the limit of Bunge's primary liability policy, carried by INA. Bunge's excess insurers will, therefore, either bear or escape the burden of the disputed sum. Consequently, Bunge's excess insurers are prosecuting this appeal in Bunge's name. See note 2.

demnify Taylor. The district court therefore gave effect to both the lien and the settlement agreement and entered judgment against Bunge. Bunge appeals in its capacity as owner of the Vessel.

## II. DISCUSSION

### A. *Statutory Overview*

In a negligence regime, an injured person has an uncertain possibility of being fully compensated for loss resulting from his or her injury. The LHWCA, like most worker's compensation schemes, exchanges this low probability of a high recovery for a certain, but limited, recovery under a strict liability regime. *Peters,* 764 F.2d at 310. To make this quid pro quo effective, LHWCA § 5(a) makes worker's compensation payments, if accepted, the employee's sole remedy against his or her employer. 33 U.S.C. § 905(a).[10] This quid pro quo, however, is only an exchange between employer and employee. LHWCA § 33(a) preserves the employee's tort actions against third parties, saying,

> If ... the person entitled to ... compensation determines that some person other than the employer is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.[11]

An important aspect of tort law in admiralty has long been the "action in rem" against the vessel.[12] LHWCA § 5(b) codifies this principle, saying that:

> In the event of injury caused by the negligence of a vessel, then such person ... may bring an action against such

vessel as a third party in accordance with the provisions of § 933 of this title. 33 U.S.C. § 905(b). In *Jones & Laughlin,* 462 U.S. at 523, 103 S.Ct. at 2541, the Supreme Court held that the third party action against the vessel under § 5(b) extends to vessels owned by the employer. On its face, § 5(b), as interpreted, stands in tension with the principle of exclusive remedy. As will be discussed later, however, admiralty law has long resolved this tension, by treating the vessel as a distinct entity separate from its owner, and the legislative history of § 5(b) demonstrates an intent to continue to do so.

### 1. Third Party Actions Under § 33(a) and The Problem of Double Recovery—The Automatic Lien

■ The existence of a third party action under LHWCA § 33(a) creates the possibility of double recovery: an injured longshoreman, who receives compensation benefits from the employer, proves the negligence of a third party, and receives compensation for his full economic loss, receives compensation in excess of actual damages. He or she is compensated twice, once in the negligence action, and once in strict liability, receiving the full measure of damages under each theory.[13] However, "The courts have long recognized a right of subrogation to the extent of payments made." 510 F.2d at 979. This judicially created right to reimbursement has been recognized since *The Etna,* 138 F.2d 37 (3d Cir.1943). The Supreme Court recently restated this principle, saying: "The longshoreman cannot receive a double recovery, because the stevedore, by paying him stat-

---

**10.** 33 U.S.C. § 905(a) provides:
 The liability of an employer prescribed in ... this title shall be exclusive and in place of all other liability of such employer to the employee.... In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

**11.** 33 U.S.C. § 933(a). If, however, the employee does not exercise his right to sue third parties within six months, his rights are assigned to his employer, who may seek indemnification for compensation benefits paid. The employer has

ninety days to exercise his right to sue or that right reverts to the employee. 33 U.S.C. § 933(b).

**12.** See note 15.

**13.** When an employee receives a formal award of compensation, § 933(e) deals with this problem by governing the distribution of any damage judgment against third parties. However, as we said in *Allen v. Texaco,* 510 F.2d 977 (5th Cir.1975), "There is no statutory counterpart of § 933(e) where payments are made to an employee without a formal award of compensation being entered." *Id.* at 979.

utory compensation, acquires a lien in that amount against any recovery the long-shoreman may obtain from the vessel." *Jones & Laughlin,* 462 U.S. at 530 n. 5, 103 S.Ct. at 2547 n. 5.

When a settlement is involved, the existence of a double recovery is not as obvious.[14] The employer's lien nevertheless attaches to the settlement fund. *Bloomer v. Liberty Mutual Insurance Co.,* 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980); *Peters,* 764 F.2d at 312. In this Circuit we have stated that "[A] worker may not settle his third-party cause of action independently of the employer's compensation lien." *Peters,* 764 F.2d at 315. In *Peters,* we outlined the method for distributing a recovery from a third-party cause of action:

(1) the worker retains his litigation expenses and a reasonable attorneys' fee; (2) the employer receives from the recovery a credit for any compensation liability not yet satisfied and reimbursement for compensation already paid; and (3) the worker retains what is left if anything.

*Id.* at 312; *see also Hayden v. Kerr-McGee,* 787 F.2d 1000 (5th Cir.1986).

Thus the LHWCA creates a harmonious scheme, guaranteeing both that the exclusive remedy against the employer is the employee's action for statutory benefits, and that, in the event of a longshoreman's recovery against a third party, the employer's lien prevents double recovery.

### 2. Vessel Negligence v. Exclusive Remedy—§ 5(b) and The Principle of Equal Treatment

██ This case is complicated somewhat by an important and longstanding feature of the law of admiralty. Admiralty involves ships, and, in courts of admiralty, ships are treated as having an existence separate and apart from their owners. In admiralty one may generally sue the vessel owner, but one may always sue the vessel itself.[15] LHWCA 5(b), 33 U.S.C. § 905(b), codifies this common law principle.[16]

Vessels and vessel owners frequently employ their own longshoremen. When this is the case, the action against the vessel creates an alternative route for placing liability on the shoulders of the employer, and thereby seemingly conflicts with the principle of exclusive remedy.

The Supreme Court has conclusively determined, however, that when Congress enacted LHWCA § 5(b) they intended to continue to treat vessels as third parties, even when the vessel is owned by the longshore-

---

**14.** If a third party could settle around the employer, he or she could, by settling, force the employer to bear part of the third party's expected liability. A longshoreman, aware of this possibility would be able to extract some of this benefit during settlement negotiations. The longshoreman might not receive a full double recovery, but would thereby receive a recovery in excess of the settlement value of his or her claim.

**15.** This is known as an "action in rem" against the vessel. *See The Resolute,* 168 U.S. 437, 18 S.Ct. 112, 42 L.Ed. 533 (1897); *The Rock Island Bridge,* 73 U.S. (6 Wall.) 213, 18 L.Ed. 753 (1867); *The Propeller Commerce,* 66 U.S. (1 Black) 574, 580, 17 L.Ed. 107 (1862); *see also* Gilmore & Black, *The Law of Admiralty* 35 (2d ed. 1975).

**16.** Prior to the 1972 Amendments to the LHWCA, an employee could bring an action against the vessel for unseaworthiness, and recover full damages on a strict liability basis. Under *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), a longshoreman could recover from the vessel by proving that his injury was "caused by an 'unseaworthy'

condition ... even if the condition was not attributable to negligence [of] the owner." 462 U.S. at 531 n. 7. If the vessel could prove that the injury was caused by negligence of the longshoreman he or she could sue the longshoreman's employer for contribution. *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Under *Reed v. Steamship Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), a longshoreman could bring an action in rem against a vessel owned by his or her employer.

In 1972, Congress added § 905(b) to the statute. This amendment superseded the Sieracki-Ryan line of cases, abolished the absolute duty of seaworthiness, and replaced it with a duty of due care. 33 U.S.C. § 905(b). The Supreme Court has held, however, that *Reed* survives the amendments, and an injured longshoreman may still bring an action against a vessel owned by his or her employer. *Jones & Laughlin,* 462 U.S. at 531, 103 S.Ct. at 2547; *see also Kerr-McGee Co. v. Ma-Ju Marine Services, Inc.,* 830 F.2d 1332, 1338 (5th Cir.1987); *Smith v. M/V Captain Fred,* 546 F.2d 119 (5th Cir.1977).

man's employer, or is the longshoreman's employer. In *Jones & Laughlin*, the Supreme Court noted that, "Most longshoremen who load and unload ships are employed by independent stevedores, who have contracted with the vessel owners to provide such services." 462 U.S. at 528, 103 S.Ct. at 2546. Therefore, "[I]n the typical tripartite situation, the longshoreman is not only guaranteed the statutory compensation from his employer; he may also recover tort damages if he can prove negligence by the vessel." *Id.* at 530, 103 S.Ct. at 2547. However,

> The second sentence of § 5(b) makes it clear that *such a separate action is authorized against the vessel even when there is no independent stevedore and the longshoreman is employed directly by the vessel owner.* That sentence provides: "If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel." If § 5(a) had been intended to bar all negligence suits against owner-employers, there would have been no need to put an additional sentence in § 5(b) barring suits against owner-employers for injuries caused by fellow servants.

*Id.* at 530–31, 103 S.Ct. at 2547 (emphasis added).

The legislative history demonstrates that the rationale for this decision was a desire that longshoremen employed by independent contractors and longshoremen employed directly by the vessel be treated equally. The House Report states that "The Committee's intent is that the same principles should apply in determining liability of the vessel which employs its own longshoremen ... as apply when an independent contractor employs such persons." *Id.* (quoting H.R.Rep. No. 92–1441, pp. 7–8 (1972)). This principle of similar treatment for independent contractor employed longshoremen and vessel employed longshoremen was reaffirmed by the Supreme Court in *Edmonds v. Compagnie Generale*

*Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). In *Edmonds*, the Court said that "all longshoremen are to be treated the same whether their employer is an independent stevedore or a shipowner-stevedore and that all stevedores are to be treated the same whether they are independent or an arm of the shipowner itself." *Id.* at 266, 99 S.Ct. at 2759. We therefore seek to apply the law so as to avoid a liability structure that favors longshoremen employed by independent contractors over longshoremen employed by the vessel.

### B. Applying Statutory Principles To The Settlement

 The case law deals with double recovery by creating a lien against the settlement fund, and articulates a general principle of equality between independent contractor employed, and vessel employed, longshoremen. These two principles stated in *Jones & Laughlin* and *Peters* control the result in this case.

The settlement between Taylor and the Vessel provides that the Vessel will indemnify Taylor against the employer's lien for benefits paid. Bunge notes that the settlement agreement is virtually identical to the settlement agreement involved in *Allen v. Texaco, Inc.*, 510 F.2d 977 (5th Cir.1975), with one exception: In *Allen* the employer's worker's compensation policy contained an express waiver of subrogation in favor of the negligent party; the Comp Policy contains no such waiver. We have previously dealt with the problem of double recovery when a settlement of this type is involved. In *Peters*, we held that "absent a waiver of subrogation ... the effect of the settlement terms [used in *Allen* is] simply to transfer the obligation automatically to reimburse the employer from the worker to the third party." 764 F.2d at 321. The rationale in *Peters* was that if the case had gone to trial, and judgment had been obtained against the third party, without a lien for worker's compensation benefits paid, the longshoreman would have received a double recovery.[17]

---

**17.** *Jones & Laughlin,* held that the employer's lien exists in cases which go to trial. 462 U.S. at

Today, however, we are faced with a settlement of the type addressed in *Peters* in the context of a third party action against the vessel, where the vessel is also plaintiff's employer, as permitted by § 5(b). The sole question before us is whether *Peters* covers such actions.

The principle of equality articulated in *Jones & Laughlin* compels a conclusion that *Peters* controls. If we disallow the lien in cases such as this one, injured vessel employed longshoremen could easily word settlement agreements to avoid the employer's lien. This would create a number of inequalities between vessel employed longshoremen and longshoremen employed by independent contractors, as well as between vessels which hire their own longshoremen and those which hire independent contractors: (1) vessels which employ longshoremen would face increased worker's compensation premiums;[18] (2) liability insurers of such vessels would receive a windfall; and (3) longshoremen employed by such vessels would be able to extract part of the liability insurer's windfall during settlement negotiations.[19] We therefore conclude that the employer's automatic lien applies in actions under § 5(b) where a vessel-employer has agreed to indemnify the plaintiff for worker's compensation benefits paid.

*C. Examining Appellant's Argument*

■ The Vessel argues that allowing the employer's worker's compensation carrier to exercise the employer's lien in actions such as this one,[20] conflicts with the basic principle of insurance law that an insurer may not subrogate against its own insured.[21]

The Vessel relies on 16 *Couch on Insurance 2d* § 61:133 at 313 (1983), which states: "No right of subrogation can arise in favor of the insurer against its insured, since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." *Id.; see Wager v. Providence Insurance Co.*, 150 U.S. 99, 14 S.Ct. 55, 37 L.Ed. 1013 (1893). This argument ignores the fact that the law of admiralty and the LHWCA treat a vessel as a third party, distinct from its owner. The worker's compensation insurer in this case therefore owes a duty to Bunge, the employer, but not to the Vessel.

Even were this not true, the facts of this case would still not conflict with the spirit of the black letter rule. Appellant concedes that the purpose of the rule is to prevent a circumstance where "To allow subrogation ... would permit an insurer, in effect, to pass the incidence of the loss, either partially or totally, from itself to its own insured, and thus avoid the coverage which its insured purchased." *St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.* 65 Cal.App.3d 66, 135 Cal.Rptr. 120, 126 (1976). This principle has been carefully followed in this Circuit. In *Wiley v. Offshore Painting Contrac-*

530 n. 5, 103 S.Ct. at 2547 n. 5. If we were to accept Bunge's argument, a liability insurer could, by settling, force the worker's compensation insurer to bear part of the expected liability. This constitutes a windfall to the liability insurer. An injured longshoreman, aware of this potential windfall could extract at least some of this windfall by threatening to go to trial. Thus a savvy longshoreman would stand to obtain the double recovery warned against in *Jones & Laughlin.* See note 14.

**18.** This is evident from the facts of *Allen,* 510 F.2d at 977. There, an independent contractor was required by its work agreement to waive its subrogation rights against one third party—Texaco. In return for that waiver of subrogation, the employer paid an extra premium of $100.00. To invalidate the employer's lien when the employer also owns the vessel on which the plain-

tiff was injured would be to imply such a waiver as a matter of law.

**19.** See note 17.

**20.** Here, the longshoreman's employer owns the vessel, and the vessel has agreed to indemnify the injured longshoreman for the employer's lien.

**21.** *Boston Insurance Co. v. Pendarvis,* 195 So.2d 692 (La.App. 1st Cir.1967); *Buckelew v. Roy,* 168 So.2d 831 (La.App. 2d Cir.1964). Of course if these state law cases are inconsistent with the LHWCA they are preempted by the federal statute. The principle stated in these cases has, however been followed in Admiralty cases in this Circuit. *Wiley v. Offshore Painting Contractors, Inc.,* 716 F.2d 256, 257 (5th Cir.1983).

*tors, Inc.,* 716 F.2d 256 (5th Cir.1983), this court paid close attention to precisely which risks and which people were covered by the particular insurance policies at issue, disallowing a lien for contribution only after it was determined that a policy insured defendant against the risk for which the insurance company sought contribution. *Id.* at 257; *cf. Tran v. Manitowoc Engineering Co.,* 767 F.2d 223 (5th Cir. 1985) ("a vessel owner acting as its own stevedore is liable only for negligence in its' owner capacity, not for negligence in its 'stevedore' capacity.") (*quoting Jones & Laughlin,* 462 U.S. at 531 n. 6, 103 S.Ct. at 2547 n. 6).

We must therefore carefully examine the risk against which the Comp Policy insures. A worker's compensation policy guards against an employer's statutory liability for workplace injuries to employees. The statutory scheme imposes liability for all workplace injuries with the caveat that the employer, or his worker's compensation insurer, will be entitled to exercise a lien against any recovery from third parties. The statute does not impose liability upon an employer for the negligence of a third party. As we demonstrated above, a vessel is considered a third party even where the vessel is owned by, or is, the longshoreman's employer. Thus by enforcing the employer's lien against the settlement fund, INA is not trying to avoid the risk against which it insured.[22]

### III. CONCLUSION

For these reasons we conclude that the worker's compensation carrier's ability to recover under the employer's lien against the settlement fund is not affected either by the fact that Bunge was both employer and owner of the Vessel, or by the indemnification terms of the settlement. The order of the district court is accordingly AFFIRMED.

---

**22.** That a separate risk is involved is supported by the example of *Allen v. Texaco,* 510 F.2d at 977. As we said in note 18, waiver of subrogation against a third party requires an insurer to absorb the additional risk of negligence of that third party. The worker's compensation insurer in *Allen* charged an additional premium for such waiver of subrogation. Today, we simply decline to imply such a waiver by operation of law.

Furthermore, we noted earlier that blocking the lien creates the opportunity of double recovery by the longshoreman. It would be ludicrous to *require* the worker's compensation insurer to insure against a financial risk that was actually greater than the plaintiff's actual damages, or the settlement value of such a claim.