**Dwight Sheridan LEWIS, Plaintiff,**

**and**

**Insurance Company of North America, Intervenor Plaintiff,**

**v.**

**UNITED STATES of America, Defendant and Third–Party Plaintiff,**

**v.**

**LOCKWOOD BROTHERS, INC., Third–Party Defendant.**

**Civ. A. No. 2:92cv408.**

United States District Court, E.D. Virginia, Norfolk Division.

March 5, 1993.

---

**630**

Brian N. Casey, Taylor & Walker, P.C., Norfolk, VA, for intervenor plaintiff.

Waverley L. Berkley, III, Jett, Berkley, Furr & Padgett, Norfolk, VA, for defendant U.S.

Richard John Barrett, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for defendant Lockwood Bros., Inc.

Jesse M. Suit, III, Rutter & Montagna, Norfolk, VA, for plaintiff.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on the Motion to Intervene filed by the Insurance Company of North America (hereinafter "INA") on November 27, 1992. The court heard oral argument on the motion on February 16, 1993.

### Statement of Facts

The facts set forth fully in the Memorandum Opinion and Order dated September 29, 1992, are incorporated by reference herein. As explained there, plaintiff, Dwight Sheridan Lewis, initiated this action against the United States, the owner and operator of the UEB–1, a navy research vessel on which plaintiff was injured while serving as a crewmember. Plaintiff's actual employer was not the U.S. Navy but rather General Offshore Corporation (hereinafter "General Offshore"), which, pursuant to a contract with the U.S. Navy, had agreed to supply a crew for the UEB–1. United States of America's Memorandum in Response to Motion to Intervene of Insurance Company of North America at 3.

On August 8, 1990, while serving on board the UEB–1, Lewis witnessed a tugboat, CAPELLA, owned and operated by Lockwood Brothers, Inc. (hereinafter "Lockwood"), collide with the UEB–1 as it attempted to moor astern the UEB–1. He alleged that as a consequence of the collision the starboard stern ladder on the UEB–1 was damaged. Two days after this collision, Lewis related that he was climbing the stern ladder of the UEB–1 when a weld securing the ladder rung to the ship gave way. As a result, Lewis averred he lost his footing and was injured.

Lewis filed a timely claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, *et seq.* (hereinafter "LHWCA"), for compensation. Intervenor's Complaint at ¶ 2. In response to that claim, INA, General Offshore's compensation carrier, paid to plaintiff $31,049 in workers' compensation benefits and paid medical expenses on his behalf in the

amount of $6,921.08. *Id.* at ¶ 2. Subsequently, General Offshore controverted plaintiff's right to compensation. An administrative law judge ruled in favor of General Offshore finding that plaintiff was a "seaman" and not a "longshoreman" and consequently that his claim fell outside the jurisdiction of the LHWCA. *Id.;* Defendant's Exhibit A—Decision and Order Denying Benefits at 7-8.

Subsequent to these events, on June 3, 1992, Lewis initiated this action in federal court against the United States, the owner of the UEB-1, under "the Suits in Admiralty Act, 46 U.S.C. §§ 741-752, the Public Vessels Act, 46 U.S.C. §§ 781-790, the general maritime laws of the United States as modified by the Jones Act, 46 U.S.C.A. §§ 688, *et seq.,* and any other applicable state and/or federal law." Complaint at ¶ 1.

INA now seeks to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a). INA maintains that

> [b]y virtue of the aforesaid payments, [it] is subrogated to the rights of Plaintiff Dwight Sheridan Lewis, against Defendant and Third-Party Defendant Lockwood Brothers, Inc., for the full amount of compensation and medical expenses previously paid, and is entitled to assert its lien and recover the aforesaid sums out of the first monies of any judgment that may be rendered in favor of the Plaintiff and against the Defendants.

Intervenor's Complaint at ¶ 4.

For the reasons as set forth below, the court GRANTS INA's motion to intervene.

### Discussion

■ Rule 24(a) of the Federal Rules of Civil Procedure states:

> **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is

so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As INA-intervenor has not cited a federal statute that "confers an unconditional right to intervene," its attempt to intervene must be premised on the second prong of Rule 24. That prong requires that INA make two showings: first, that it has "an interest relating to the property or transaction which is the subject of the action," and second, that it "is so situated that the disposition of the action may as a practical matter impair or impede ... [its] ability to protect that interest." The court finds that INA has met these requirements.

■ At the hearing on February 16 and in its brief, counsel for INA argued that INA, as the compensation carrier of plaintiff's employer, General Offshore, was entitled to an equitable lien on any monies plaintiff might recover from his suit against the United States, the third party tortfeasor, in spite of the fact that no formal award had been entered pursuant to the LHWCA. INA asserted that the right to an equitable lien derived not from the express language of the statute but instead was crafted by the courts. After further review of the case law, the court concludes that at least with respect to this point, INA's position accords with the prevailing rule.

In an attempt to avoid recapitulating the entire LHWCA, the court will address only the genesis of equitable liens of the type argued for by INA. Briefly stated, such equitable liens resulted from lower courts who attempted to rectify what they perceived to be an unjust result produced by a literal application of the LHWCA. Specifically, these courts reacted to the LHWCA's failure to account for the situation where an employer makes payments in response to a claim by an injured longshoreman but an "award" [1] is never entered with respect to that claim.

---

**1.** The term "award" means "a formal order issued by the deputy commissioner, an adminis- trative law judge, or Board." 33 U.S.C. § 933(b).

The dilemma created by this situation is best understood by contrasting it with its converse, i.e., when payments on a LHWCA claim have been made and an award has been entered. Section 933(b) of the LHWCA provides that an employee's "[a]cceptance of compensation under an award in a compensation order filed by the deputy commissioner, an administrative law judge, or the Board shall operate as an assignment to the employer of all rights of the person entitled to compensation to recover damages against such third person...." As an assignee, the act then permits the employer to prosecute an action for damages against the third party tortfeasor, 33 U.S.C. § 933(d), and to retain money from such action sufficient to reimburse it for the amounts paid to the employee as compensation under the act. 33 U.S.C. § 933(e).

In cases where an employer pays benefits pursuant to the act but where no formal award is ever entered, however, the employer is apparently unable to recover from the actual third party tortfeasor because no assignment of rights transpires. Moreover, the employee is seemingly permitted to recover twice. To remedy this situation, the courts have long imposed equitable liens in favor of employers on recoveries their injured employees might reap from third party tortfeasors. *See, e.g., The Etna,* 138 F.2d 37 (3d Cir.1943); *Peters v. North River Ins. Co.,* 764 F.2d 306 (5th Cir.1985); *Allen v. Texaco, Inc.,* 510 F.2d 977, 979–80 (5th Cir.1975); *Nacirema Operating Co. v. Oosting,* 456 F.2d 956 (4th Cir.1972), *cert. denied,* 409 U.S. 980, 93 S.Ct. 313, 34 L.Ed.2d 243 (1972); *Hugev v. Dampskisaktieselskabet Int'l,* 170 F.Supp. 601 (S.D.Cal.1959), *aff'd sub nom. Metropolitan Stevedore Co. v. Dampskisaktieselskabet Int'l,* 274 F.2d 875 (9th Cir.), *cert. denied,* 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147 (1960); *Fontana v. Pennsylvania R.R.,* 106 F.Supp. 461 (S.D.N.Y.1952), *aff'd sub nom. Fontana v. Grace Line, Inc.,* 205 F.2d 151 (2d Cir.), *cert. denied,* 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953). The creation of the equitable lien naturally engendered a concomitant right to intervene in the litigation between the employee and the third party tortfeasor. *See Allen,* 510 F.2d at 979 ("[W]here the employee himself sues the third party tortfeasor, the courts have long recognized a right of subrogation to the extent of payments made, and have permitted the employer or its insurer to intervene in the employee's suit to protect its right....").

In *Nacirema Operating Co.,* the Fourth Circuit, in recognizing this judicially-created remedy, stated:

> Section 33(e) of the [Longshore and Harbor Workers' Compensation] Act, which governs the distribution of the recovery against a wrongdoer when the employer institutes the action, specifically provides for reimbursement to the employer of all compensation and medical payments that he has advanced. There is no counterpart of this statutory lien in § 33(f) which deals with an employee's suit against a wrongdoer. To forestall double recovery by the employee, an equitable lien patterned after the § 33(e) lien has been judicially imposed on recoveries in suits brought by employees.

456 F.2d at 958 n. 3.

Moreover, in *Bloomer v. Liberty Mutual Ins. Co.,* 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980), the Supreme Court indicated its approval of this practice of the lower courts:

> Like the present version, the [Longshore and Harbor Workers' Compensation] Act as amended in 1938 did not make provision for the distribution of amounts recovered from the third party in a suit brought by the longshoreman. The lower courts, however, interpreted the Act to require that the stevedore be reimbursed for his compensation payment out of the sum recovered from the third party. Congress was understood not to contemplate double recovery on the longshoreman's part, and the stevedore did not, therefore, lose the right to reimbursement for its compensation payment.

*Id.* at 79, 100 S.Ct. at 928. Although Congress amended the LHWCA in 1959, the Supreme Court went on to state that "[t]he legislative history demonstrate[d] that Con-

gress did not intend to alter the rule allowing the stevedore to recover the full amount of its lien from the longshoreman's third-party recovery." *Id.* at 80–81, 100 S.Ct. at 929. Quoting from the legislative history, the court stated that "[a]n employee 'would not be entitled to double compensation,' for 'an employer must be reimbursed for any compensation paid to the employee out of the net proceeds of the recovery.'" *Id.* at 81, 100 S.Ct. at 929 (quoting S.Rep. No. 428, 86th Cong., 1st Sess. 2 (1959)).

■ The unanimity with which the case law speaks on this issue compels the court to agree with INA–Intervenor's general position that an equitable lien is created in favor of an employer when it pays compensation pursuant to a claim filed under the LHWCA without the entry of a formal award. The case *sub judice* presents a particularly anomalous set of facts, however, because unlike the cases cited to the court espousing the judicially-created equitable lien rule, this case involves an employer which paid money under the LHWCA when it was ultimately determined there was no obligation to pay. As best the court can discern, in each of the cases recognizing or applying the rule, the LHWCA applied and required the employer to compensate the employee. Here, on the other hand, an administrative law judge finally concluded that Lewis was a seaman, not a longshoreman, and therefore outside the jurisdiction of the LHWCA. Consequently, the employer, General Offshore, was under no legal obligation to pay compensation to its employee, Lewis. The question remaining before this court, then, is whether an employer's erroneous decision to pay benefits under the LHWCA nevertheless creates an equitable lien in favor of the employer on proceeds its employee may recover from a third party tortfeasor. For the reasons that follow, the court concludes that it does.

The court finds it beneficial to return to the language found in what appears to be the first case to invoke an equitable lien, *The Etna*, 138 F.2d 37 (3d Cir.1943). There, the court stated that "the right to subrogation ... under equitable principles, attaches where one, *not acting officiously*, pays money *on account of a legal obligation* resting upon him for the imposition whereof another is held pecuniarily responsible." *Id.* at 39 (citing Restatement of Restitution § 162, and comment thereon) (emphasis added). Applying the test articulated in *The Etna*, arguably the lien should be granted.

First, INA's payments to Lewis were made after Lewis filed a claim pursuant to the LHWCA. Clearly, then, such payments were not rendered officiously. Second, General Offshore and its insurance carrier, INA, assumed that General Offshore was legally obligated to make such payments. While, in retrospect, Lewis was a seaman and not a longshoreman, and thus INA was not obligated to pay benefits under the LHWCA, the Supreme Court's recent, lengthy opinion defining a "seaman" for the purposes of the Jones Act, *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), evinces the legal confusion surrounding the "seaman"–"longshoreman" distinction. Thus, although it was ultimately determined that INA did not pay "on account of a legal obligation," it did pay on account of a *potential* legal obligation.[2]

The general rule is that "a person, who induced thereto solely by a mistake of law, has conferred a benefit upon another to satisfy in whole or in part an honest claim of the other to the performance given, is not entitled to restitution." Restatement of Restitution § 45 (1937). Applying the general rule would thus require the court to deny INA's motion for INA's belief that it had a legal obligation to pay constitutes a mistake of law. The policies behind the LHWCA, however, justify the creation of an exception to the general rule.

---

**2.** As the Supreme Court announced the *McDermott* decision on February 19, 1991, six months after Lewis had been injured on August 10, 1990, and after he had filed a timely claim for compensation under the LHWCA, INA lacked the benefit of this decision when it made payments to Lewis.

The court in *Peters v. North River Ins. Co.*, 764 F.2d 306, 310 (5th Cir.1985), described the general purposes of the LHWCA to be as follows:

> The LHWCA allocates the costs of industrial accidents through a compromise between the rights of employees and employers that is typical of many workers' compensation schemes: an injured worker is entitled to "prompt and certain" compensation benefits from his employer even if the employer is not to blame for the accident, *see Louviere v. Shell Oil Co.*, 509 F.2d 278, 283 (5th Cir.1975), *cert. denied*, 423 U.S. 1078, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976); the benefits, however, are generally less than the worker could recover under traditional tort compensation systems and constitute the employer's exclusive liability for the worker's injuries, *see* 33 U.S.C. § 905(a). To accomplish its *"manifest purpose ... to assure prompt aid to the employee when his need is greatest," Louviere*, 509 F.2d at 283, the Act encourages voluntary payment of benefits, *see* 33 U.S.C.A. § 914(a), (d), but also provides an administrative procedure for resolving disputed cases, *see id.* § 914(d); 20 C.F.R. pt. 702 (1984).[3]

(emphasis added); *see also Liberty Mutual Ins. Co. v. Ameta & Co.*, 564 F.2d 1097, 1103 (4th Cir.1977) ("A stevedore-employer should not be required to controvert every claim for compensation under the Act simply to ensure the entry of a formal award in order to preserve the statutory assignment and subrogation rights.... Such a requirement would ... cripple *the congressionally explicit goal of prompt payment of claims* that need not be controverted by employers." (emphasis added)).

The court finds that to promote the prompt and voluntary payment of benefits to employees under the LHWCA, the better rule is to extend the equitable lien doctrine to encompass LHWCA payments made in response to potential as well as actual legal obligations. A contrary holding would discourage the prompt payment of claims by employers and their insurance carriers—the "manifest purpose" of the LHWCA—resulting instead in the controversion of claims that employers or their insurance carriers perceive to be at all colorable.

While the court has found no cases dealing specifically with this issue, one case bearing a marked factual similarity to this case is instructive. *See Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675 (5th Cir.1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970). In *Massey*, the shipowner-employer made voluntary payments totalling $3,500 ostensibly under the Longshore and Harbor Workers' Act, made applicable by the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333(c). *Id.* at 676 n. 2. The shipowner-employer then sought to recover the money erroneously paid on the ground that the plaintiff, as a seaman, was not entitled to LHWCA benefits and should not be allowed to retain them. *Id.* While the Fifth Circuit did not require the plaintiff to repay the money he had erroneously received, it granted the employer "a credit against those items of damages ultimately allowed that [bore] a reasonable relation to the items of loss compensated by workmen's compensation benefits." *Id.* at 680. The court stated that such a result was "fair in the confusion of these ambiguous-amphibious controversies." *Id.* at 679. This court's position accords with that of the court in *Massey*.

Finally, the court will address the case of *Yost v. American Overseas Marine Corp.*, 798 F.Supp. 313 (E.D.Va.1992), which the United States contends controls the disposition of this motion. The court finds that *Yost* is inapposite to the facts of this case. Two facts, in particular, distinguish this case from *Yost*. First, in *Yost*, the employer made what this court would characterize as "officious" payments to its injured employee.[4] *Id.* at 316. There, the employee

---

**3.** 33 U.S.C. § 914(a) provides: "Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer."

**4.** *See The Etna*, 138 F.2d 37 (3d Cir.1943), and accompanying analysis herein, *supra* at 633.

did not file a claim for workmen's compensation nor did any federal or state statute mandate that the employer unilaterally make payments to its employee. *Id.* In the current case, on the other hand and as stated earlier, the employee, Lewis, submitted a claim under the LHWCA triggering the payment of compensation by INA. Therefore, INA, when it made payments pursuant to this claim, was not acting "officiously." Secondly, this case involves the LHWCA, whose policies—specifically, the promotion of prompt and voluntary payments to employees—were not a factor in the *Yost* decision. Moreover, there is an abundance of LHWCA caselaw treating the subject of equitable liens which this court would be remiss to ignore. These factors were absent in the context of *Yost.* Accordingly, the court finds that *Yost* is inapplicable to this case.[5]

Consequently, for the reasons articulated herein, the court GRANTS INA's motion to intervene.

The Clerk is DIRECTED to send a copy of this Opinion and Order to counsel of record in the case.

It is so ORDERED.

---

**5.** To the extent that General Offshore as the employer may be a joint tortfeasor, a separate action by plaintiff is pending in state court.