# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60119

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2014

Lyle W. Cayce
Clerk

GARY CHENEVERT,

Plaintiff – Appellee

v.

TRAVELERS INDEMNITY COMPANY,

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, WIENER, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

In *Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675 (1969), we considered the case of a shipowner/employer who made voluntary payments to an injured employee under the Longshore and Harbor Workers' Compensation Act ("LHWCA") and who was later held liable to the worker in a Jones Act claim. We held that the shipowner/employer was entitled to "a credit against those items of [Jones Act] damages . . . that bear a reasonable relation to the items of loss compensated by [LHWCA] benefits." *Id.* at 680. The present case requires us to answer a related question: whether an insurer who makes voluntary LHWCA payments to an injured employee on behalf of a shipowner/employer is entitled to recover these payments from the employee's settlement of a Jones Act claim against the shipowner/employer based on the

No. 13-60119

same injuries for which the insurer has already compensated him. We hold that such an insurer acquires a subrogation lien on the employee's Jones Act recovery for the amount of LHWCA benefits paid. Accordingly, we REVERSE the district court's denial of the motion to intervene filed by Travelers Indemnity Company ("Travelers") and REMAND with instructions.[1]

## BACKGROUND

Gary Chenevert was employed by GC Constructors ("GC") as a crane operator. In May 2007, Chenevert fell and was injured while working on a barge with a mounted crane. At the time of Chenevert's accident, Travelers provided coverage to GC for, among other things, its workers' compensation exposure to injured longshore and harbor workers. Travelers provided no coverage for "bodily injury to a master or member of the crew of any vessel." Between May 2007 and May 2010, Travelers voluntarily paid Chenevert a total of $277,728.72 in indemnity and medical benefits under the LHWCA.

In May 2010, Chenevert sued GC in federal court, alleging that he was working as a seaman at the time of his accident and seeking damages under the Jones Act for GC's negligence. Based on Chenevert's claim that he was a "seaman" (rather than a "longshoreman"), Travelers stopped making payments under the LHWCA. In November 2010, GC filed a notice of lien claiming that, in the event judgment is rendered in favor of Chenevert on his Jones Act claim, GC "has a lien against any funds due and payable to Travelers Insurance Company who is the insurer under the U.S. Longshore and Harbor Workers' Compensation Act."

Although Chenevert, through counsel, initially represented to Travelers that he did not contest Travelers's lien, he explained in August 2011 that he

---

[1] Travelers was incorrectly characterized as a defendant in the district court, and is therefore incorrectly characterized as a defendant in the caption for this opinion. Travelers is in fact a movant that is currently appealing the denial of its motion to intervene.

intended to oppose any effort by Travelers to recover from his pending settlement with GC. In October 2011, Travelers was granted permission to file an untimely motion to intervene.[2] On October 27, 2011, Travelers moved to intervene in Chenevert's suit for the purpose of asserting its subrogation rights against any money recovered by Chenevert.

At some time between October 18, 2011, and October 27, 2011, Chenevert and GC agreed on a settlement. In November 2011, GC notified the district court that it had reached a settlement with Chenevert and requested that $277,782.22 of the settlement funds be deposited into the court's registry pending the outcome of the dispute between Chenevert and Travelers. The district court granted this motion.[3] Chenevert and GC ultimately settled for $1,725,000, with $277.728.72 of this amount deposited into the district court's registry. In December 2011, the district court granted Chenevert and GC's joint motion for dismissal of Chenevert's claims against GC, with the case remaining open to allow resolution of Travelers's pending motion to intervene.

After the death of U.S. District Judge W. Allen Pepper, Jr., who had been presiding over the case, the case was randomly reassigned to a different district judge. However, for reasons that are not clear, a magistrate judge entered an order approximately two months later denying Travelers's motion to intervene. Travelers filed a motion to reconsider, arguing that the magistrate judge had no authority to enter the order because the parties had not consented to the magistrate judge's jurisdiction, and the district court had never referred the

---

[2] Under the scheduling order in place, motions were required to be filed no later than May 16, 2011.

[3] GC's motion stated an incorrect amount to be deposited; the amount was later corrected to $277,728.72.

motion to the magistrate judge for a proposed ruling.  Travelers also objected to the substance of the magistrate judge's order.

In response to Travelers's motion, the magistrate judge withdrew his earlier order and submitted a somewhat expanded analysis as a report and recommendation to the district court.  Travelers filed objections to this report and recommendation.  The district court adopted the magistrate judge's recommendation in a memorandum opinion, denying Travelers's motion to intervene.  The district court held that Travelers has no right of subrogation as to the settlement proceeds, and therefore no interest in the property in the case.  The district court also held that Travelers's interests in the litigation had been adequately represented by GC.  Travelers now appeals.

## DISCUSSION

Under Federal Rule of Civil Procedure 24(a)(2), a party is entitled to intervene if:

> (1) the motion is timely; (2) the putative intervenor asserts an interest related to the property or transaction that forms the basis of the controversy in the action into which he seeks to intervene; (3) the disposition of the action may impair or impede his ability to protect that interest; and (4) it is not adequately represented by the existing parties.

*Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003).  A district court's ruling under Rule 24(a)(2) is reviewed *de novo*. *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992).  We discuss below whether Travelers has an interest in the settlement fund and whether its interest was adequately represented; the remaining elements are not disputed.

## I.     Double Recoveries Involving the LHWCA

### A.     *The LHWCA and Third-Party Vessel Suits*

The LHWCA, like other workers' compensation schemes, embodies a compromise between workers and employers: workers injured on the job receive quick, certain compensation from their employers regardless of fault,

but employers are generally absolved from any further liability in relation to such injuries. *See, e.g.*, 1 The Law of Maritime Personal Injuries § 2:1 (5th ed. 2012). However, the LHWCA generally preserves an injured worker's remedies against third parties who may have caused the injury. For example, a worker covered by the LHWCA whose injury is "caused by the negligence of a vessel" may bring an action against the vessel. 33 U.S.C. § 905(b).

It is therefore possible for an injured worker to obtain a tort recovery from a third party based on injuries for which he has already been compensated by his employer under the LHWCA. Although the LHWCA "does not expressly provide for reimbursement from a judgment or settlement obtained by the worker from a third party of compensation benefits that an employer has already paid," courts "have uniformly held . . . that an employer has a subrogation right to be reimbursed from the worker's net recovery from a third party for the full amount of compensation benefits already paid." *Peters v. North River Ins. Co.*, 764 F.2d 306, 312 (5th Cir. 1985). Furthermore, if compensation benefits are paid by an employer's insurer, that insurer is subrogated to the employer's reimbursement rights under the LHWCA. *See id.* at 308 n.1 (citing 33 U.S.C. § 933(h)).

In *Taylor v. Bunge Corp.*, 845 F.2d 1323, 1324 (5th Cir. 1988), this court considered a case in which a longshoreman was injured by a vessel owned by his employer. The worker received LHWCA benefits from his employer's insurer and later sued the vessel for negligence pursuant to 33 U.S.C. § 905(b). *Id.* The worker and the vessel settled for $700,000 "over and above the worker's compensation benefits already paid," in effect trying to settle around the insurer's lien. *Id.* at 1325. The insurer intervened and attempted to enforce the employer's lien against the settlement fund to recover the benefits

it had paid. [4]  *Id.*  We recognized circuit precedent holding that "an injured longshoreman and a third party defendant cannot settle around the employer's lien."  *Id.* at 1324 (citing *Peters*); *see Peters*, 764 F.2d at 308 (holding that "settlement of the worker's claim necessarily settled the employer's subrogation claim and entitled the employer to reimbursement to the extent of the funds that the third party has agreed to pay in settlement").  We considered "whether this principle survives when [the] employer wears two hats as employer and as vessel."  *Id.* at 1324-25.  We concluded that the same principle is fully applicable and held that "the worker's compensation carrier's ability to recover under the employer's lien against the settlement fund is not affected . . . by the fact that [the insured employer] was both employer and owner of the Vessel."  *Id.* at 1330.

### B.     The LHWCA and Jones Act Suits

A worker who has received LHWCA benefits may also obtain a double recovery for the same injury by suing his employer for negligence under the Jones Act.  The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against the employer."  46 U.S.C. § 30104.  "[T]he Jones Act and the LHWCA are complementary regimes that work in tandem: The Jones Act provides tort remedies to *sea*-based maritime workers, while the LHWCA provides workers' compensation to *land*-based maritime employees."  *Stewart v. Dutra*

---

[4] The employer argued that allowing an insurer to exercise the employer's lien would "conflict[] with the basic principle of insurance law that an insurer may not subrogate against its own insured," because the employer had agreed to indemnify the worker for any attempt by the insurer to exercise the lien against the settlement fund.  *Taylor*, 845 F.2d at 1329, 1325 n.6.  The panel rejected this argument for two reasons.  *Id.* at 1329-30.  This issue does not arise in the present case because GC did not agree to indemnify Chenevert against Travelers's attempt to enforce the lien.

*Construction Co.*, 543 U.S. 481, 488 (2005).[5]  As the Supreme Court has recognized, a worker whose job title fits within one of the enumerated occupations of the LHWCA (such as a longshoreman or a ship repairman) may nevertheless be a "seaman" excluded from LHWCA coverage and entitled to bring a claim against his employer under the Jones Act.  *See Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81 (1991).  This is a "fact-specific" question that "depend[s] on the nature of the vessel, and the employee's precise relation to it."  *Id.* at 88 (quotations omitted).  Furthermore, "an employee who receives voluntary payments under the LHWCA without a formal award is not barred from subsequently seeking relief under the Jones Act" because "the question of coverage [under the LHWCA] has never actually been litigated."  *Id.* at 91.

As the Supreme Court noted in *Gizoni*, the LHWCA "specifically provides that any amounts paid to an employee for the same injury, disability, or death pursuant to the Jones Act shall be credited against any liability imposed by the LHWCA."  502 U.S. at 91 (citing 33 U.S.C. § 903(e)).  We have previously held that the reverse is also true; *i.e.*, that a shipowner-employer who voluntarily pays LHWCA benefits to an injured employee and is later found liable under the Jones Act is entitled to "a credit against those items of damages . . . that bear a reasonable relation to the items of loss compensated by workmen's compensation benefits."  *Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675, 679-80 (5th Cir. 1969).  The question presented by this case is whether the principles of *Peters* and *Taylor* are applicable in the context of a Jones Act settlement.  In other words, does an insurer who has made voluntary

_____

[5] The LHWCA provides that an "employee" covered by the Act does not include "a master or member of a crew of any vessel."  33 U.S.C. § 902(3)(G).  The Supreme Court has explained: "[M]aster or member of a crew" is a refinement of the term "seaman" in the Jones Act; it excludes from LHWCA coverage those properly covered under the Jones Act."  *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347 (1991).

LHWCA payments to an injured employee on behalf of the employer have a right to be reimbursed from the employee's settlement of a Jones Act claim against the employer based on the same injuries?

## II.    Travelers's Subrogation Right

We perceive no sound reason why an insurer's right of reimbursement against a Jones Act recovery should be different from its right of reimbursement against a § 905(b) recovery.  Arguably, the insurer has an even stronger equitable claim to repayment from a Jones Act recovery.  A worker who recovers against a third party under § 905(b) is necessarily covered by the LHWCA and therefore entitled to compensation benefits; nevertheless, the worker must still use the proceeds of the recovery to repay the employer or insurer for the benefits.  On the other hand, a worker who succeeds in a Jones Act claim is necessarily a seaman, and therefore not entitled to LHWCA benefits.  It would be particularly unfair to deny the insurer the right to recover the benefits it has paid in such a situation.[6]

The district court appears to have viewed Travelers's attempt to assert a lien on settlement funds paid by GC (who is insured by Travelers) as an attempt to subrogate against its own insured.  As the district court recognized, as a general rule "no right of subrogation can arise in favor of an insurer against its own insured."  16 Couch on Insurance 3d § 224:1 (2013).  However, this broad statement "leave[s] out a crucial boundary of the rule: the prohibition of insurers' subrogation against their own insureds applies to claims arising from the very risk for which the insured was covered by that insurer."  *Id.*  Assuming Travelers's assertion of its repayment lien against

---

[6] Two district courts have considered the issue and held that an insurer who has paid LHWCA benefits to an injured worker may intervene in the worker's Jones Act suit against his employer to preserve the insurer's subrogation rights in the event the worker obtains a recovery. *Kahue v. Pacific Envtl. Corp.*, 834 F. Supp. 2d 1039, 1060-61 (D. Haw. 2011); *Lewis v. United States*, 812 F. Supp. 629, 633-34 (E.D. Va. 1993).

Chenevert's Jones Act settlement fund may be construed in some way as asserting a right of subrogation against GC, this would be unproblematic because Travelers did not insure GC against Jones Act liability. *See also Taylor*, 845 F.2d at 1329-30 ("[B]y enforcing the employer's lien against the settlement fund, [the insurer] is not trying to avoid the risk against which it insured.").

As explained above, an insurer's right of reimbursement from an employee's tort recovery is derived from the employer's right of reimbursement; that is, by paying LHWCA benefits to the injured employee on behalf of the employer, the insurer is subrogated to the employer's right of reimbursement. *See Peters*, 764 F.2d at 308 n.1. The magistrate judge, in his report and recommendation, reasoned that "[t]o suggest that an employer has a lien on a portion of the funds *the employer itself* agreed to pay in settlement the moment it settled the case is nonsense." However, at the time of settlement, it is the insurer, not the employer, who has the lien. The insurer, by satisfying the employer's payment obligations under the LHWCA, becomes subrogated to all of the employer's repayment rights.

Along the same lines, Chenevert argues that allowing GC to assert a repayment lien against a portion of a settlement that it agreed to pay (without any provision for repayment of the lien) would in some sense abrogate the settlement. But again, it is Travelers that is asserting the lien, not GC. Chenevert argues that "Travelers would have no greater right to recover money from Gary Chenevert than GC Constructors itself would possess," but this is incorrect. By paying LHWCA benefits on behalf of GC, Travelers acquired a repayment lien that is independent of, and cannot be nullified by, GC. If this were not so, an employer and employee could easily settle around the insurer's lien and prevent any possibility of recovery by the insurer.

No. 13-60119

We hold that an insurer who makes voluntary LHWCA payments to an injured employee on behalf of the employer acquires a subrogation lien on any recovery by the employee in a Jones Act suit against the employer based on the injuries for which the insurer has already compensated him. We therefore conclude that Travelers is entitled to the disputed funds in the district court's registry, and that Travelers may intervene for the purpose of collecting these funds. *See McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1071 (5th Cir. 1970) (insurer's intervention to protect its subrogation interest in a plaintiff's recovery is cognizable as intervention of right under Rule 24(a)).

## CONCLUSION

For the reasons explained above, we REVERSE the district court's denial of Travelers's motion to intervene and REMAND the case for the purpose of distributing the disputed funds in the district court's registry to Travelers.