MARATHON OIL COMPANY,
Plaintiff-Appellant,

v.

MID-CONTINENT UNDERWRITERS, Certain Underwriters at Lloyd's London, and Drake Insurance Company, Defendants-Appellees.

No. 85–3102.

United States Court of Appeals,
Fifth Circuit.

April 16, 1986.

**1302**

David L. Carrigee, Burke & Mayer, New Orleans, La., for plaintiff-appellant.

Michael McAlpine, Johnson & McAlpine, Richard A. Cozad, New Orleans, La., for defendants-appellees.

Before THORNBERRY, RUBIN, and JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The question presented is the scope of a waiver-of-subrogation clause in an admiralty protection and indemnity policy. The underwriters that wrote a policy containing a provision waiving "all subrogation" against an additional assured contend that the clause does not mean what it says: the insurers argue that the waiver of subrogation applies only with respect to claims covered by the policy. Because that interpretation would render the waiver meaningless, we hold that, when underwriters issue a policy covering an additional assured and waiving "all subrogation" rights against it, they cannot recoup from the additional assured any portion of the sums they have paid to settle a risk covered by the policy, even on the theory that the recoupment is based on the additional assured's exposure for risks not covered by the policy. The underwriters here attempted to avoid the waiver by the artful dodge of settling a personal injury claim with an agreement that, if the injured person recovered from the subrogation-immune insured,

the underwriters would recover half of what they had paid. We reverse the district court which found that the insurers' tactics did not violate any legal duty.

## I.

The underwriters' plan, which may have been derived from the famed *Mary Carter* device,[1] evolved from an effort by the underwriters to cut a loss they had insured. Marathon chartered a vessel, the M/V RON MARC, from B & C Boat Rentals under an agreement requiring B & C to provide protection and indemnity insurance naming Marathon as an additional assured and waiving subrogation rights against it. B & C obtained such a policy from British Underwriters covering Marathon as an additional assured, but only while the vessel was chartered to Marathon and, by implication, only for claims arising out of the operation of the vessel. The policy also contained a clause stating: "Underwriters agree to waive all rights of subrogation against [Marathon], but only during such time as the vesse[l] [is] working for said company."

While the M/V RON MARC was chartered to Marathon, James Tye, who was working as a seaman aboard the vessel, was injured through the negligence, at least in part, of a crane operator employed by Marathon aboard a fixed platform. Tye filed two suits in the same federal court, the Eastern District of Louisiana. In the first, he sued B & C, the vessel, Marathon in its capacity as charterer, and the underwriters jointly, asserting claims as a seaman and for general maritime negligence. The second suit was against Marathon alone, predicated on Marathon's liability as platform owner.

Without notifying Marathon, British Underwriters entered into negotiations with Tye to settle the claims made in his first suit. The underwriters and Tye settled in full the claims made in that suit for $60,000, but Tye reserved his right to proceed against Marathon as owner of the platform for any liability Marathon may have had in that capacity—the claim asserted in the second suit. As an additional element of the settlement, the parties executed a "side letter," not mentioned in the settlement agreement, in which Tye agreed to pay the underwriters the first $30,000 he recovered from Marathon. The letter was not filed in the court records, but its content was soon disclosed by counsel for Tye during settlement negotiations with Marathon. Tye's counsel told Marathon's counsel that his client's claim was worth $115,000, and that he could not take less than $85,000 from Marathon because Tye was obliged to pay $30,000 of any recovery to the underwriters. Marathon paid Tye $85,000 for a release, and then sued the underwriters to recover all or part of the $30,000. Tye's cautious counsel kept the $30,000 in escrow pending resolution of the suit.

## II.

As an additional assured, Marathon had coverage only for liability it incurred as an operator, owner, or charterer of the M/V RON MARC, not for liability arising from its other activities.[2] The parties agree that British Underwriters did not insure Marathon for liability arising from its capacity as platform owner. British Underwriters contend that the waiver of subrogation is co-extensive with coverage and thus did not apply with regard to Mar-

---

1. The term "Mary Carter" agreement refers to a contract between a plaintiff and one co-defendant typically with the following features: (1) secrecy; (2) the contracting defendant remains a party to the suit; (3) the contracting defendant's liability will be reduced proportionately by increasing the liability of his co-defendants; and (4) the contracting defendant guarantees a minimum recovery to the plaintiff. *See Wilkins v. P.M.B. Sys. Eng'g, Inc.,* 741 F.2d 795, 798 (5th Cir.1984); *Quad/Graphics, Inc. v. Fass,* 724 F.2d 1230, 1236 (7th Cir.1983); *Reichenbach v.*

*Smith,* 528 F.2d 1072, 1073 (5th Cir.1976). *See also* Note, *Mary Carter Agreements in Maritime Personal Injury Suits,* 22 S.Tex.L.J. 545, 545 n. 2 (1983); Annot., 65 A.L.R.3d 602 (1975).

2. *Wedlock v. Gulf Mississippi Marine Corp.,* 554 F.2d 240, 242 (5th Cir.1977); *Lanasse v. Travelers Ins. Co.,* 450 F.2d 580, 584 (5th Cir.1971), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972).

athon's uninsured exposure. No waiver of subrogation was required, however, with respect to covered liability, for the provision of insurance necessarily implies that the insurer will not seek to recoup amounts paid by it to satisfy insured claims. Were this not so, the insurance would be illusory.[3] The addition of a waiver-of-subrogation clause reinforces the provision implied by law, but the clause is not merely redundant, particularly when, as here, "all subrogation" is waived. Because they had waived "all subrogation," British Underwriters could not have sued in their own name to recover from Marathon any part of the $60,000 they paid Tye, even on the theory that Marathon, in its uninsured capacity as platform owner, was contributorily liable as a joint tortfeasor.

What British Underwriters could not do directly by suit in their own name, they cannot do indirectly, by using Tye as their cat's-paw. The insurers, moreover, did more than merely disguise their intent. By the manner in which they settled Tye's claim, British Underwriters in effect financed Tye's claim against Marathon: Tye had $60,000 in hand which he could use to prosecute the second suit and could retain regardless of success in the litigation. As a collateral benefit, the settlement could not have been revealed to the jury that had been demanded in the Marathon suit.[4] The sympathy of the jurors for an injured plaintiff might well have been greater than the jurors' regard for an insurer seeking to reduce its liability. Indeed, if the underwriters might recover one-half of their payment in this fashion, they might recover all.

Our conclusion adopts the position taken by Judge John R. Brown in *Lanasse v. Travelers Insurance Company.*[5] While the original opinion in *Wiley v. Offshore Painting Contractors, Inc.*[6] expressed a different view, the portion of the opinion so holding was withdrawn and modified by the court on rehearing,[7] and hence has no precedential force.

### III.

British Underwriters assert that Marathon has proved no damage. Marathon has shown, however, that, as a result of the underwriters' actions, it was unable to settle the claim against it for less than $85,000, even though Tye was willing to accept a net payment of $55,000 from Marathon. Whether Tye's recovery resulted wholly from the merit of his claim or the negotiating skill of his counsel is immaterial. These factors affected both sets of negotiations and settlements.

Tye was willing to accept $115,000 as full compensation for his claims. British Underwriters have never asserted, even in argument, that the value of his claim was less than that amount. Nor have they questioned the reasonableness of Marathon's payment to Tye of $85,000. British Underwriters were willing to risk $60,000 because of their exposure. While Marathon has not proved the exact amount of its injury, we believe a fair resolution is to set the liability of each party as the median between the amounts each paid to Tye, $57,500. This is, of course, one-half of the $115,000 that Tye accepted. Accordingly, the judgment of the district court is REVERSED and judgment is RENDERED for Marathon for $27,500.

**3.** *United States v. St. Bernard Parish,* 756 F.2d 1116, 1127 (5th Cir.1985); *Frank Briscoe Co. v. Georgia Sprinkler Co.,* 713 F.2d 1500, 1502 (11th Cir.1983); *Builders & Mfrs. Mut. Casualty Co. v. Preferred Automobile Ins. Co.,* 118 F.2d 118, 121–22 (6th Cir.1941); *Keystone Paper Converters, Inc. v. Neemar, Inc.,* 562 F.Supp. 1046, 1050 (E.D.Pa.1983); *New Amsterdam Casualty Co. v. Homans-Kohler, Inc.,* 310 F.Supp. 374, 376 (D.R. I.1970).

**4.** *See, e.g., Reichenbach v. Smith,* 528 F.2d 1072, 1074 (5th Cir.1976), and Fed.R.Evid. 408. *But*

*see Belton v. Fibreboard Corp.,* 724 F.2d 500, 504–05 (5th Cir.1984).

**5.** 450 F.2d 580, 584–85 (5th Cir.1971), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972).

**6.** 711 F.2d 602, 613–14 (5th Cir.), *aff'd in part and rev'd in part,* 716 F.2d 256 (5th Cir.1983).

**7.** 716 F.2d at 257.