United States Court of Appeals,

Fifth Circuit.

No. 91-3419.

5801 ASSOCIATES, LTD., Plaintiff-Appellee,

v.

CONTINENTAL INSURANCE COMPANY, Defendant-Appellant.

Feb. 18, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before GARWOOD and EMILIO M. GARZA, Circuit Judges.[*]

PECURIAM:

This is an interlocutory appeal from a partial summary judgment fixing liabilities in an admiralty case. This case arises from the sinking of the barge OCEAN TRANSPORTER off the coast of South Carolina. The issue in the underlying summary judgment proceeding and on appeal is whether or not the owner of the vessel is entitled to coverage under the barge's insurance policy where the loss of the vessel was caused, in part, by the bareboat charterer's failure to maintain the OCEAN TRANSPORTER in a seaworthy condition.[1] We hold that the owner is entitled to such coverage and, accordingly, we affirm the district court's order granting partial summary judgment in favor of 5801.

There Once Was a Barge Whose Untimely Demise, to an Insurance Dispute Did Later Give Rise ...

The barge OCEAN TRANSPORTER[2] was owned by the appellee 5801 Associates, Ltd.

---

[*]Judge John R. Brown was on the panel that heard oral argument in this case, but passed away before the decision was entered, and the case is accordingly decided by a quorum. *See* 28 U.S.C. § 46(d).

[1]The failure of the bareboat charterer, Ocean Transport Corporation, to maintain the vessel in a seaworthy condition is still a disputed issue in the pending action below. For the purpose of determining insurance coverage for 5801 Associates, however, the owner and the insurer stipulated to such a failure.

[2]The barge was known as "HANNA 5801" before it entered service with Ocean Transport Corporation. It is referred to as such in the insurance policy at issue.

(5801) and was chartered to Ocean Transport Corporation (OTC) under a bareboat charter party. OTC obtained hull and protection and indemnity (P & I) insurance coverage on behalf of the vessel[3] from the appellant, Continental Insurance Company (Continental). OTC obtained the policy in Missouri, OTC's domicile.

In late 1987, OCEAN TRANSPORTER took on a cargo of paraxylene at a terminal in Corpus Christi, Texas, under the supervision of an OTC tankerman. The tankerman directed the loading of the barge in accordance with his general experience but without knowledge of the OCEAN TRANSPORTER's stability letter[4] and its requirements.

The barge left Corpus Christi under tow by the tug M/V JENNIFER L. BOUDREAUX and proceeded east along the inland waterway. On December 6, 1987, the vessels were in open seas off the coast of South Carolina where they encountered a storm. During the storm, the barge broke free from the tug. The stern end of the barge began to settle immediately and, after several days, the entire vessel slipped beneath the surface, stern end first.

After investigating the accident, Continental paid the cargo owners under the barge's P & I coverage but denied coverage to OTC and 5801 under the OCEAN TRANSPORTER's hull insurance provisions. OTC and 5801 filed this admiralty action in October 1988 seeking recovery under the hull policy coverage.

Continental argues that the failure to post the stability letter on the OCEAN TRANSPORTER made the vessel unseaworthy and, therefore, breached an express warranty in the hull coverage. Continental contends that both 5801 and OTC failed to keep the OCEAN TRANSPORTER in a seaworthy condition, and furthermore, that even if there was no independent failure on the part of 5801, the failure of OTC voided coverage as to both parties.

5801, on the other hand, maintains that its duty, and indeed its ability, to monitor and control the condition of the vessel ended six months prior to the accident when OTC's operations as bareboat

[3]5801 was listed as an additional assured under the policy.

[4]The stability letter is a document issued by the United States Coast Guard following an inspection which states how a vessel should be properly loaded in order to maintain its stability at sea.

charterer commenced. It further maintains that the severability clause in the policy provides for continued coverage for one assured regardless of the actions of another.[5]

5801 moved for partial summary judgment on the issue of whether or not it was covered under the hull provisions of the OCEAN TRANSPORTER's policy. The trial court first determined that the "seaworthiness" clause was not a warranty, but rather a policy exclusion for acts found to violate the implied warranty of seaworthiness. The trial court then decided that the severability clause should be construed in accordance with Missouri state law. Accordingly, the court ruled that 5801 was entitled to coverage separate from OTC pursuant to the severability clause. Finding no disputed issues of material fact regarding 5801's coverage[6], the court granted the partial summary judgment. ... No Warranty of Seaworthiness was found by the Court; Instead, an Exclusion of the Unhelpful Sort ...

The threshold issue is whether the seaworthiness provision in the OCEAN TRANSPORTER's policy constituted an express warranty of seaworthiness or merely an exclusion from coverage for acts which violated the implied warranty of seaworthiness. The seaworthiness provision stated as follows:

> "[Continental] shall not be liable for any loss, damage or expense arising out of the failure of the assured to maintain the Vessel in a seaworthy condition after attachment of this policy; the foregoing, however, not to be deemed a waiver of any warranty of seaworthiness implied at law."

At trial, Continental maintained that the seaworthiness provision constituted an express warranty. The violation of an express warranty will void a policy in its entirety. *See Aguirre v. Citizens Casualty Co.,* 441 F.2d 141, 143 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971); *Saskatchewan Gov't Ins. Office v. Spot Pack, Inc.,* 242 F.2d 385, 388 (5th

---

[5]The severability clause provides as follows:

> This policy will discharge any liability that it would bear if each of the Assureds named herein was separately insured; however, it is specifically understood and agreed that the naming of one assured hereunder shall not increase the liability of this company [Continental] or otherwise alter any other terms and conditions of this policy.

[6]Continental argues that there are disputed fact issues regarding the meaning of disputed terms in the policy, the existence of an independent breach by 5801 and 5801's privity with OTC. The trial court, as do we, rejected these arguments.

Cir.1957).

Curiously, Continental has not alleged error in the trial court's determination that the seaworthiness provision was not an express warranty.[7] Rather, Continental asserts various alternative theories of policy avoidance in an attempt to justify its denial of 5801's claim.

Initially, Continental argues that a violation of an implied warranty of seaworthiness will avoid the policy as to all assureds. This argument is without merit. The implied warranty of seaworthiness, as recognized by this court, allows the insurer to deny coverage only for damages proximately caused by the owner knowingly permitting the vessel to break ground in an unseaworthy condition. *Spot Pack,* 242 F.2d at 388. Continental has failed to bring forward any competent summary judgment evidence to suggest that 5801 was guilty of such carelessness.

... And Among the Parties there Arose a Great Fury, When the Trial Court Applied the Law of Missouri ...

In order to determine what effect any actions by OTC had on 5801's coverage, we must consider the "severability clause" of the policy. The initial issue is which law this court should apply in interpreting the policy. The trial court determined that the law of Missouri controlled the interpretation of the policy in question based on the Supreme Court's decision in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). We agree.

In *Wilburn Boat,* the Supreme Court held that states historically have regulated the practices of all types of insurance companies doing business within their borders and, therefore, state law will apply when construing an insurance policy in the absence of a clear federal precedent to the contrary. *Id.* at 321, 75 S.Ct. at 374. This holds true even in admiralty cases. *Id.*

This court has identified three factors to consider when deciding whether or not to apply state law under *Wilburn Boat. Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, 886 (5th Cir.), *cert.*

---

[7]Any attempt by Continental to properly assert its express warranty argument on appeal would likely have been futile. Both 5801 and the trial court relied on a previous interpretation of an identical policy provision to support their positions. *Insurance Co. of N. Am. v. Board of Comm'rs,* 733 F.2d 1161, 1165 (5th Cir.1984). In *Board of Commissioners,* this court held that identical seaworthiness language constituted " 'an exclusion which purports to deny coverage in situations wherein there has been a breach of the continuing negative warranty of seaworthiness implied by law.' " *Id.* (quoting trial court's opinion).

*denied,* --- U.S. ----, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991). Specifically, we directed a district court faced with making such a determination to consider (i) whether the federal maritime rule constitutes "entrenched federal precedent", which is consistently used to control the conduct of maritime actors, (ii) whether the state has a substantial and legitimate interest in having its law applied, and (iii) whether the state rule is materially different from the federal rule. *Id.*

The severability clause, such as the one relied upon by 5801, is a relative newcomer to maritime insurance contracts. Currently only three federal court opinions dealing with such clauses exist, one of which is the district court minute entry from which Continental appeals. *See Employers Ins. v. Avondale Shipyards, Inc.,* 1991 WL 329580 (E.D.La.1991) (stating that clause protects coverage for one insured despite breach of implied warranty of seaworthiness by another); *5801 Assoc. v. Continental Ins. Co.,* 1991 WL 81814 (E.D.La.1991) (stating that clause allows coverage for one insured independent of acts of other); *Pan Am. World Airways v. Port Auth.,* 1988 WL 101337 (E.D.N.Y.1988) (addressing effect of clause's definition of insured). By any standard, such authority hardly can be termed an "entrenched federal precedent" consistently used to control the conduct of maritime actors.

The second inquiry under *Albany Insurance* is whether Missouri has a substantial and legitimate interest in having its law applied. It is undisputed that the policy in question here was sought, negotiated for, and ultimately contracted for within the state of Missouri. *Wilburn Boat* leaves little doubt that a state does have a substantial and legitimate interest in such insurance transactions.[8]

---

[8]It does appear that such deference to state interest in the field of maritime insurance is somewhat anomalous in light of centuries of legal development aimed at standardizing admiralty law both in this country and globally. This court recently was faced with a non-insurance scenario in which maritime law was silent and we reiterated that it was better to rely on general common law instead of state law which would " "impair the uniformity and simplicity which is a basic principle of the federal admiralty law ...' ". *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.,* 959 F.2d 49, 53 (5th Cir.1992).

Not only are maritime actors faced with the laws of fifty jurisdictions when maritime insurance disputes arise, but both insurers and insureds seem to be presented with an engraved invitation to "shop around" for the most favorable state insurance laws. Since *Wilburn Boat* is unambiguous, however, we are bound to follow it absent Supreme Court authority to the contrary.

Finally, we must determine whether the Missouri rule regarding severability clauses is materially different from the federal rule. Because the sparse federal case law on the subject hardly rises to the level of an established federal rule, there is no material difference with the law of Missouri. Accordingly, we hold that the trial court was correct in its application of Missouri law to interpret the severability clause.[9]

... Based on the Law of That Landlocked Dominion, the Court Found Coverage in its Learned Opinion ...

After determining that Missouri law does apply to the interpretation of the severability clause, we must decide how Missouri law resolves the issue. The policy issued by Continental contained a severability clause which stated as follows:

> This policy will discharge any liability that it would bear if each of the Assureds named herein was separately insured; however, it is specifically understood and agreed that the naming of one assured hereunder shall not increase the liability of this company [Continental] or otherwise alter any other terms and conditions of this policy.

As Continental points out, most Missouri opinions dealing with the severability clause result from auto insurance disputes.[10] Specifically, Missouri has held that severability clauses mean exactly what they say. Co-insureds under a single policy are treated as though they are covered under separate policies except that the aggregate policy limits apply to both. *See Shelter Mut. Ins. Co. v. Brooks,* 693 S.W.2d 810, 811-812 (Mo.1985) (en banc) (treating family members of deceased permittee insured and named insured as though covered under separate policies); *Bituminous Casualty Co. v. Aetna Life & Casualty Co.,* 599 S.W.2d 516, 520 (Mo.Ct.App.1980) (stating that

---

[9]Even if Missouri law did not apply, the result would be no different. While there is no established federal rule regarding severability clauses, basic principles of contract interpretation would compel the result reached by the trial court. The severability clause is unambiguous: the additional assureds were to be treated as though they were covered under separate policies to the extent of the aggregate policy limits. Even if the language were ambiguous, ambiguities in an insurance policy should be resolved in favor of coverage.

Additionally, in the absence of any severability clause, federal common law interpreting the Inchmaree clause would compel the same result. We address the Inchmaree clause below.

[10]Continental's clear implication is that there is something inherently wrong with applying auto case law to an admiralty case. While automobile insurance opinions are not typically regarded as a bastion of admiralty law, Continental has cited no cases which would prevent the application of such authority in a *Wilburn Boat* scenario.

apparent intent and effect of severability clause is to provide each insured with separate coverage, as if each were separat ely insured with distinct policy, subject to liability limits of policy). In other words, while A and B might be covered under the same policy regardless of what the other did to merit exclusion from coverage, the total amount of claims made by both A and B could not exceed the policy limits. Furthermore, the Eighth Circuit has held that, under Missouri law, an innocent insured is protected from the policy-voiding acts of its co-insured. *Haynes v. Hanover Ins. Cos.,* 783 F.2d 136, 138 (8th Cir.1986).

Based on this interpretation, the trial court was correct in holding that the severability clause afforded coverage to 5801. Even assuming that OTC allowed the OCEAN TRANSPORTER to break ground in an unseaworthy condition and thus was excluded from its coverage under the policy conditions, the policy would have been in full force and effect with regard to 5801.

... And No Other Clauses (Like Inchmaree) Could Save the Insurer From its Duty.

5801 goes on to argue that even if the policy contained no severability clause, the Inchmaree clause would afford it coverage. Unlike the severability clause, entrenched federal precedent exists on the interpretation of the Inchmaree clause. While we are inclined to agree with 5801's assertion, we need not reach this issue.

Accordingly, the district court's order granting partial summary judgment is AFFIRMED.