AGIP PETROLEUM CO., INC., Plaintiff,

v.

GULF ISLAND FABRICATION, INC., et al., Defendants.

Civil Action No. H–94–3382.

United States District Court, S.D. Texas, Houston Division.

March 8, 1996.

---

See also, 920 F.Supp. 1330.

Kent E. Westmorland, Phelps & Dunbar, Houston, Texas, for Underwriters third-party defendant.

James M. Tompkins, Galloway, Johnson, Tompkins & Burr, Houston, Texas, for Gulf Island Fabrication, Inc. defendant and third party plaintiff.

## ORDER ON SUMMARY JUDGMENT

HUGHES, District Judge.

1. The court adopts the memorandum and recommendation of the United States Magistrate Judge signed January 16, 1996.

2. Gulf Island Fabrication is granted summary judgment against Underwriters subscribing to Policy Numbers SJ0002, SJ0003A, and SJ0003B.

3. Underwriters are denied partial summary judgment against Gulf Island Fabrication.

## MEMORANDUM AND RECOMMENDATION

CRONE, United States Magistrate Judge.

Pending before the court are Defendant Gulf Island Fabrication, Inc.'s (Gulf Island) motion for summary judgment (# 29) and Plaintiffs Underwriters Subscribing to Policy Numbers SJ0002, SJ0003A, and SJ0003B's (Underwriters) cross-motion for partial summary judgment (# 33). Having reviewed the motions, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Gulf Island's motion for summary judgment should be granted and that Underwriters' cross-motion for partial summary judgment should be denied.

1. *Background*

AGIP Petroleum Co., Inc. (AGIP) is a Delaware corporation with its principal place of business located in Houston, Texas. Gulf Island is a Louisiana corporation with its principal place of business in Houma, Louisiana. Under a contract between AGIP and Gulf Island executed on May 5, 1993, Gulf Island was to fabricate a four pile, sixteen slot drilling/production platform jacket to be installed in Grand Isle Block 102 of the Gulf of Mexico located offshore Louisiana. The contract specifically provided that Gulf Island would:

provide all labor, supervision, equipment, machinery, ... all consumables and supplies, all fabrication support, engineering, procurement, storage and handling, transportation and drayage, fabrication, load-out and seafastening services, required for

delivery to [AGIP] of Fabrication of the Jacket and Piles....

Fabrication of the jacket also included the attachment of mud mats to provide stability to the jacket for positioning on the ocean floor. AGIP contracted with Snamprogetti USA, Inc. (Snamprogetti) to supervise the fabrication of the jacket and with McDermott Incorporated (McDermott) to transport and install the jacket. Snamprogetti, in turn, entered into an agreement with Petro–Marine Engineering of Texas, Inc. (Petro–Marine) to design the jacket.

On October 17, 1993, the jacket was loaded out and shipped offshore from Houma, Louisiana. It was transported successfully to the installation site and offloaded from the transportation barge. The jacket's mud mats, however, were breaking loose from the structure. Repairs were done in the water, and the jacket was upended into a vertical position for landing. There were still problems with the mud mats, which eventually were removed by divers. The jacket was placed in the desired location on the ocean bed without the mud mats. During pile-driving operations, the jacket sank and toppled over on its side in water 257 feet deep. The jacket was salvaged and towed to shore for inspection and repairs. It was reinstalled successfully on January 27, 1994.

AGIP incurred damages and costs exceeding $15,000,000.00. Underwriters paid AGIP up to policy limits under builder's risk policy SJ0002 and excess policies SJ0003A and SJ0003B. Underwriters claim that they are subrogated to AGIP for the insured loss and are pursuing this claim based on the right of subrogation. On September 30, 1994, Underwriters filed this action in the name of AGIP against Gulf Island, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332 and admiralty jurisdiction under 28 U.S.C. § 1333. Underwriters assert claims of negligence, breach of warranty, design defect, and misrepresentation, alleging that Gulf Island did not fabricate the mud mats in accordance with the design drawings and specifications that AGIP had submitted to Gulf Island.

On December 5, 1994, Gulf Island filed a counterclaim, or alternatively, a third party complaint against Underwriters, alleging breach of insurance contract, breach of warranty, fraud, misrepresentation, breach of the duty of good faith and fair dealing, and violations of various provisions of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. Gulf Island asserts that the builder's risk policy issued to AGIP provided coverage to Gulf Island as an "other assured" and that in the event that Gulf Island is found liable to AGIP, then Gulf Island is entitled to coverage and indemnity from AGIP and its Underwriters. Underwriters, however, deny that Gulf Island is covered as an "other assured."

On October 18, 1994, AGIP filed suit for the recovery of its uninsured losses, including damages for lost production revenues against Gulf Island, McDermott, Snamprogetti, and Petro–Marine, alleging negligence, gross negligence, breach of contract, breach of warranty, and products liability. On February 17, 1995, that action was consolidated into this action. On June 19, 1995, Gulf Island filed its motion for summary judgment on all of Underwriters' claims. On June 30, 1995, Underwriters filed its cross-motion for partial summary judgment against Gulf Island.

The crux of this dispute centers on the interpretation of the term "additional assured" as it is defined in the builder's risk insurance policy. AGIP was the principal, named insured on the policy. Gulf Island claims that it was an additional insured under the policy and that Underwriters are precluded from maintaining a lawsuit against it. Underwriters assert that Gulf Island is not an additional insured under the policy as a matter of law, and, therefore, Gulf Island is amenable to suit. Alternatively, Underwriters contend that even if Gulf Island is an additional assured under the policy, controlling case law allows for a subrogation suit against Gulf Island for the subject loss.

## 2. *Analysis*

### A. *The Standard for Summary Judgment*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson v. Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to the nonmovant's case on which it bears the burden of proof at trial. *Celotex v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

### B. *Choice of Law*

■ A marine insurance contract is a marine contract within federal admiralty jurisdiction. *New Hampshire Ins. Co. v. Martech U.S.A., Inc.*, 993 F.2d 1195, 1198 (5th Cir.1993); *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 n. 2 (5th Cir.), *cert. denied*, 502 U.S. 901, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991). The construction of maritime contracts is governed by federal maritime law. *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 894 (5th Cir.), *modified on other grounds*, 22 F.3d 568 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 498, 130 L.Ed.2d 408 (1994);

*Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir.1986). The Fifth Circuit, however, has repeatedly recognized that in the absence of clearly controlling federal precedent, state law applies. *See 5801 Assocs., Ltd. v. Continental Ins. Co.*, 983 F.2d 662, 665 (5th Cir.1993); *Magnolia Marine Transp. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1577 (5th Cir.1992); *Albany Ins. Co.*, 927 F.2d at 886; *Employers Ins. of Wausau v. Trotter Towing Corp.*, 834 F.2d 1206, 1210 (5th Cir.1988); *Ingersoll–Rand Fin. Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir.1985), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 573. "This presumption of state law is, by now, 'axiomatic.'" *Albany Ins. Co.*, 927 F.2d at 886 (quoting *INA of Texas v. Richard*, 800 F.2d 1379, 1380 (5th Cir.1986)). Therefore, the regulation of marine insurance generally is left to the states. *New Hampshire Ins. Co.*, 993 F.2d at 1198 (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321, 75 S.Ct. 368, 374, 99 L.Ed. 337 (1955)); *5801 Assocs., Ltd.*, 983 F.2d at 665.

The Fifth Circuit has listed three factors the court is to consider when determining whether to apply state rather than federal law:

1. whether the federal maritime rule constitutes "entrenched federal precedent," which is consistently used to control the conduct of maritime actors;

2. whether the state has a substantial and legitimate interest in having its law applied; and

3. whether the state rule is materially different from the federal rule.

*5801 Assocs., Ltd.*, 983 F.2d at 665; *Albany Ins. Co.*, 927 F.2d at 886. These factors, however, while instructive, are not dispositive. *Albany Ins. Co.*, 927 F.2d at 887. Under the first factor, maritime law supersedes state law if it specifically governs the conduct at hand and has consistently been invoked to address such conduct. *Id.* at 888. In similar situations, the Fifth Circuit has consistently held that there is no right of subrogation against an additional assured where the claim at issue was covered under the principal assured's insurance policy. *See, e.g., Dow Chem. Co. v. M/V Roberta Tabor*, 815

F.2d 1037, 1043 (5th Cir.1987); *Marathon Oil Co. v. Mid–Continent Underwriters*, 786 F.2d 1301, 1302 (5th Cir.1986); *Wiley v. Offshore Painting Contractors, Inc.*, 716 F.2d 256, 257 (5th Cir.1983).

Under the second factor, the states have a substantial and legitimate interest in the regulation of relationships under an insurance contract, as "states are far better equipped to balance the risks that each party to an insurance contract endures." *Albany Ins. Co.*, 927 F.2d at 887. The court, however, should not apply state law, unless the local interest materially exceeds comparative maritime interests. *Id.* at 887 (citing *Grant Smith–Porter Ship Co. v. Rohde*, 257 U.S. 469, 477, 42 S.Ct. 157, 158, 66 L.Ed. 321 (1922); *Walter v. Marine Office of Am.*, 537 F.2d 89, 94–95 (5th Cir.1976)).

▮ Under the third factor, state law should not govern where it is materially different from federal maritime law because it "would defeat the reasonably settled expectations of maritime actors." *Albany Ins. Co.*, 927 F.2d at 887. Texas law generally disallows an insurer's right of subrogation against its own insured. *See Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.*, 418 F.Supp. 56, 60 (N.D.Tex.1976). While not specifically addressed, no Texas cases appear to suggest that an insurer has a right of subrogation against an additional assured on a policy. The only Texas case relating to an insurer's right of subrogation against a subcontractor claiming additional assured status held that the insurer could proceed against that party because there was no intent to include the subcontractor as an assured under the policy. *McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 39 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). Here, in the absence of any state law dealing directly with the right of subrogation against an additional assured, this court will apply federal maritime law. State law will apply to other general contract issues not expressly covered by federal maritime law.

▮ In ascertaining the appropriate state law to apply in a maritime case, a court must utilize general maritime choice of law rules. *Albany Ins. Co.*, 927 F.2d at 891;

*Gonzalez v. Naviera Neptuno A.A.,* 832 F.2d 876, 880 n. 3 (5th Cir.1987). Choice of law analysis generally requires the application of the law of the state that has the " 'most significant relationship' " to the issue in question. *Albany Ins. Co.,* 927 F.2d at 891 (citing RESTATEMENT (Second) of Conflict of Laws § 6 (1980)). The most significant relationship test examines the relative interests of the states that share a relationship with the transaction and the parties. *Id.* at 891. In order to determine which states have sufficient contact with the policy and the parties, the court looks to the state where the policy was formed or where it was issued and delivered. *Id.; see also Randall,* 13 F.3d at 894; *Transco Explor. Co. v. Pacific Employers Ins. Co.,* 869 F.2d 862, 863 (5th Cir.1989); *Graham v. Milky Way Barge, Inc.,* 811 F.2d 881, 885 (5th Cir.1987); *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.,* 766 F.2d 195, 198 (5th Cir.1985). After the court has identified the states that have sufficient contact with the policy, the court then determines which state has the greatest interest in resolving the issues surrounding the policy. *Albany Ins. Co.,* 927 F.2d at 891; *Truehart v. Blandon,* 884 F.2d 223, 226 (5th Cir.1989). Here, the insurance policy was issued and delivered in Houston, Texas, to AGIP, where its corporate offices are located, by Sedgwick James of Texas, Inc., also located in Houston, Texas. Texas is the only state with contact with the policy at issue in this case; therefore, it is not necessary to proceed to the second step in the analysis. Hence, Texas law applies to the interpretation of the insurance contract between AGIP and Underwriters in instances where federal law does not apply.

Moreover, the builder's risk policy issued to AGIP provides that it is subject to Texas law. The policy had originally provided under Clause 12 that "This insurance is subject to English law and practice." Endorsement 10 to the policy, however, which was issued on September 26, 1994, states:

Effective June 21, 1992, it is hereby understood and agreed that Clause 12. LAW AND PRACTICE of the General Conditions is revised as follows:

This insurance is subject to Laws of the State of Texas.

■ Contending that American courts generally look to English law when interpreting marine insurance policies, Underwriters argue that English law applies to the interpretation of the insurance policy in this case. *See Lenfest v. Coldwell,* 525 F.2d 717, 724 n. 15 (2d Cir.1975). American courts have, in fact, looked on occasion to British law in cases involving the interpretation of marine insurance contracts. *Antilles Steamship Co., Ltd. v. Members of Am. Hull Ins. Syndicate,* 733 F.2d 195, 198 (2d 1984); *Lenfest,* 525 F.2d at 724 n. 15; *St. Paul Ins. Co. v. Great Lakes Turnings, Ltd.,* 829 F.Supp. 982, 988–89 (N.D.Ill.1993); *SCAC Transport (USA), Inc. v. Atlantic Mut. Ins. Co.,* 652 F.Supp. 1091, 1095 (S.D.N.Y.1987); *Delta Supply Co. v. Liberty Mut. Ins. Co.,* 211 F.Supp. 429, 431 (S.D.Tex.1962). As the United States Supreme Court has noted, " '[t]here are special reasons for keeping in harmony with the marine insurance laws of England.' " *Calmar S.S. Corp. v. Scott,* 345 U.S. 427, 443, 73 S.Ct. 739, 747, 97 L.Ed. 1125 (1953) (quoting *Queen Ins. Co. of Am. v. Globe & Rutgers Fire Ins. Co.,* 263 U.S. 487, 493, 44 S.Ct. 175, 176, 68 L.Ed. 402 (1924)). Here, however, there is no absence of American precedent concerning subrogation, making the application of British law unnecessary. *See Antilles Steamship Co., Ltd.,* 733 F.2d at 198; *SCAC Transport (USA), Inc.,* 652 F.Supp. at 1094; *Delta Supply Co.,* 211 F.Supp. at 431. Thus, American federal maritime law and Texas law will be applied in the case at bar with respect to the marine insurance issues.

## C. *Additional Assured*

■ A contract for insurance is subject to the same rules of construction as other contracts. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994); *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 (Tex.1993); *National Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991); *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). In deciding a motion for summary judgment in a case involving the construction of an insurance policy, the court must determine whether there is any ambiguity in the applicable terms of the policy. *Yancey v. Floyd West &*

*Co.,* 755 S.W.2d 914, 917 (Tex.App.—Fort Worth 1988, writ denied). Such a determination is a question of law. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir. 1987). These rules require that when the terms of an insurance policy are plain, definite, and unambiguous, a court may not vary those terms. *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965); *see also Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518–19 (Tex.1980). An insurance policy is ambiguous only when it is "reasonably susceptible to more than one meaning ... but if only one reasonable meaning clearly emerges it is not ambiguous." *Universal C.I.T. Credit Corp. v. Daniel,* 243 S.W.2d 154, 157 (Tex.1951).

The courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n,* 783 F.2d 1234, 1238 (5th Cir.1986); *Blaylock v. American Guar. Bank Liab. Ins. Co.,* 632 S.W.2d 719, 722 (Tex.1982). Moreover, courts should not strain to find ambiguity if, in so doing, they defeat the probable intentions of the parties, even when the result is an apparently harsh consequence to the insured. *Calcasieu–Marine Nat. Bank v. American Employers' Ins. Co.,* 533 F.2d 290, 295 (5th Cir.), *cert. denied,* 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976).

Underwriters claim that Gulf Island is not an assured under the policy because AGIP and Underwriters did not intend for Gulf Island to be an "other assured." Underwriters further contend that Gulf Island has not shown that it is an "other assured" because it has failed to produce evidence that it "entered into agreements in connection with the subject matters of insurance and/or any works, activities, preparations, etc. connected therewith." Clause 2 of the builder's risk policy provides:

2. ASSUREDS:
   PRINCIPAL ASSUREDS
   (1) AGIP Petroleum Co. Inc. and all other members of the Grand Isle Block 102 Consortium as now or may hereafter be constituted who acquire or assume in part or in whole the interest(s) of the aforementioned Principal Assureds.

   (2) Parent and/or Subsidiary and/or Affiliated and/or Associated and/or Inter–Related Companies of the above as they now exist or may hereafter be constituted and their Directors, Officers and Employees.

   (3) Project Managers, if any.

   OTHER ASSUREDS

   (4) Contractors and/or sub-contractors and/or suppliers and any other Company, Firm, Person or Party with whom the Assured(s) in (1), (2), (3) or this paragraph (4) have, or in the past had, entered into agreement(s) in connection with the subject matters of Insurance, and/or any works, activities, preparations, etc., connected therewith.

This insurance shall be deemed to be a separate insurance in respect of each Assured hereunder (as if a separate policy had been issued to each) without increasing Insurers' limits of liability hereunder or increasing the deductible amounts shown herein or the application thereof in any one loss.

As reflected in the policy, the "other assureds" clause specifically includes "contractors" and "any other Company, Firm, Person, or Party" who have contracted with AGIP on the subject matter of the insurance—the development of Grand Isle Block 102. The contract between Gulf Island and AGIP provides that "'CONTRACTOR' shall mean Gulf Island Fabrication." The contract between Gulf Island and AGIP specifically deals with the fabrication of the jacket which is part of the subject matter of the policy involving "[f]abrication, transit, installation, commissioning, and associated operations of the Grand Isle Block 103 [sic] development." Clearly, the agreement to fabricate the jacket is included in the subject matter of the builder's risk policy. Hence, Gulf Island could be deemed an "other assured" either as

a "contractor" or "other Company, Firm, Person or Party" who has entered into an agreement with AGIP.

Moreover, Roy L. Wright, AGIP's Contracts and Procurements Manager, stated in a letter dated March 2, 1993, to Bernard Boudreaux, Senior Project Manager for Gulf Island on the fabrication of the jacket, that the policy would cover Gulf Island:

> Our Insurance Department has indicated that the Builders Risk Policy states that "Contractors ... who have entered into an agreement" with AGIP Petroleum Co. Inc. on this project are covered under this policy.

By the clear and unambiguous language of the policy, it is evident that Underwriters and AGIP intended to include contractors such as Gulf Island, who entered into agreements with AGIP concerning the Grand Isle Block 102 development, within the policy's coverage. This is further confirmed by Wright's letter. Thus, Gulf Island is an "other assured" under the builder's risk policy issued to AGIP.

### D. *Subrogation*

#### (1). *Subrogation Against an Insured*

It is well settled in the area of insurance law, that because subrogation may arise only as against third persons, an insurer does not have a right of subrogation against its insured to recover for sums paid out under the insurance policy. *See Great Lakes Transit Corp. v. Interstate S.S. Co.,* 301 U.S. 646, 654, 57 S.Ct. 915, 918, 81 L.Ed. 1318 (1937); *Phoenix Ins. Co. v. Erie & W. Transp. Co.,* 117 U.S. 312, 321, 6 S.Ct. 750, 753, 29 L.Ed. 873 (1886); *Peavey Co. v. M/V ANPA,* 971 F.2d 1168, 1177 (5th Cir.1992); *Taylor v. Bunge Corp.,* 845 F.2d 1323, 1329 (5th Cir.1988); *United States v. Parish of St. Bernard,* 756 F.2d 1116, 1127 (5th Cir.1985). An insurer who subrogates itself to its insured "stands in the shoes" of the insured and cannot recover by subrogation except to the extent of the rights of the insured. *Stafford Metal Works, Inc.,* 418 F.Supp. at 58. To permit subrogation " 'would permit an insurer, in effect, to pass the incidence of the loss, either partially or totally, from itself to its own insured, and thus avoid the coverage which its insured purchased.' " *Taylor,* 845 F.2d at 1329 (quoting *St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.,* 65 Cal.App.3d 66, 135 Cal.Rptr. 120, 126 (1976)). An insurer that is contemplating subrogation against its own insured must state such intent is clear and unequivocal language in the policy. *Farr Man & Co., Inc. v. M/V Rozita,* 903 F.2d 871, 879 (1st Cir.1990).

#### (2). *Waiver of Subrogation*

Moreover, when an insurer has waived subrogation, it may not recover against an assured. *Dow Chem. Co.,* 815 F.2d at 1043; *Marathon Oil Co.,* 786 F.2d at 1302; *Lanasse v. Travelers Ins. Co.,* 450 F.2d 580, 585 (5th Cir.1971), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972); *Great Am. Ins. Co. v. Gulf Marine Drilling No. 1,* 302 F.2d 332, 333–34 (5th Cir.1962). Underwriters assert, however, that if Gulf Island is found to be an additional assured under the builders risk policy, then subrogation against Gulf Island is allowed because the policy covers Gulf Island only to extent of the fabrication and loading out of the jacket, and therefore, any waiver of subrogation rights against Gulf Island is effective only as to such activities.

Clause 6 of the policy provides:

6. SUBROGATION

Insurers agree to waive rights of subrogation against any Assured and any person, Company, Firm or Corporation whose interests are covered by this Policy and against any employee, agent or contractor of the Principal Assured(s)....

As is evident from this clause, Underwriters intended to waive any right of subrogation against Gulf Island either as an additional assured, as a company whose interests are covered by the policy, or as a contractor of AGIP—the principal assured. The waiver of any rights of subrogation was confirmed in writing by AGIP. In a letter dated May 13, 1993, Diego Calo, Project Development Manager for AGIP, confirmed to Craig Henderson of McDermott, not only that "AGIP Petroleum Co. Inc. does cover all Contractors and vendors under the subject

insurance," but also that "there is a blanket waiver of subrogation included with this insurance according to our Mr. Bob Fisher," who headed AGIP's insurance department. Additionally, nowhere in the policy does it state in clear and unequivocal language that Underwriters are contemplating subrogation against any of its assureds or other assureds.

(3). *Effect of Other Insurance Coverage*

██ Underwriters point out that Gulf Island's comprehensive general liability (CGL) policy covers "all operations to be conducted under this Contract." Underwriters assert that the CGL policy is primary to any coverage under AGIP's builder's risk policy, and, thus, Gulf Island and its Underwriters are primarily liable for AGIP's losses. The losses at issue here, however, are not the types of losses generally covered by CGL insurance, but rather by builder's risk insurance. Indeed, Gulf Island's Underwriters denied coverage for the incident under its CGL policy for the following reasons:

1) The improper fabrication of the mud mats does not constitute an "occurrence" as defined in the certificate.

2) The certificate specifically excludes "property damage", which includes loss of use, to work performed by you or on your behalf which arises out of the work performed or any materials, parts or equipment furnished in connection therewith.

3) The policy specifically excludes "property damage" to property not physically injured or destroyed which results from delay or lack of performance of any contract or agreement.

4) The policy specifically excludes "Failure to Perform or Supply".

Furthermore, Gulf Island had no contractual responsibility or independent duty to obtain additional builder's risk insurance. While the "REQUIRED INSURANCE" section of AGIP and Gulf Island's contract requires Gulf Island to obtain numerous types of insurance, including worker's compensation, employer's liability, CGL, automobile liability, umbrella/excess liability, watercraft, and aircraft, noticeably lacking is any requirement to obtain builder's risk insurance. Any assertion by Underwriters that Gulf Island was independently required to obtain a builder's risk policy is inconsistent with Wright's confirmation that Gulf Island was covered under AGIP's policy. In response to the letter from Wright, assuring that Gulf Island was covered under AGIP's builder's risk policy, Greg Risher, Gulf Island's Administrative Manager, states in his affidavit that the "letter prompted [him] to delete the Agip Grand Isle Block 102 Project from GIF's existing Builder's Risk Coverage as evidenced by the attached notices to GIF's insurance brokers."

(4). *Limitation of Coverage by Contract*

██ Underwriters also note that the policy provides that its coverage may be limited by contract. Clause 4 of the policy states:

The interest of the "Other Assured(s)" shall be covered throughout the entire Policy period (irrespective of contract period(s)) subject to full coverage as herein, unless specific contract(s) contain provisions to the contrary, in which event, insurance hereunder for such specific contract(s) only, shall at the Principal Assureds' option be limited accordingly.

Underwriters contend that the contract between AGIP and Gulf Island by its terms limits the scope of the coverage afforded to Gulf Island. Paragraph 1.5 of Attachment A to the contract between AGIP and Gulf Island states:

"CONTRACTOR" will load-out all items on INSTALLER's supplied barge(s) to the satisfaction of the COMPANY provided Marine Surveyor. COMPANY is responsible for Builders Risk Insurance for WORK during fabrication and load-out.

While this clause states that AGIP is to provide builder's risk insurance during the fabrication and load-out of the jacket, it does not state that Gulf Island's coverage is limited to that period or that Gulf Island is required to obtain a builder's risk policy for any period after fabrication and load-out. In fact, AGIP's builder's risk policy provided coverage for the period when the jacket was sent back to Gulf Island for repairs. Calo stated at deposition:

Q. [D]id you have the authority to make the decision that the jacket should be put

back on the barge and sent back in to Gulf Island for repair?

\* \* \* \* \* \*

A. Of course, I would have asked my— no. No. No. Not only with me. I would have requested approval because of the additional cost.

\* \* \* \* \* \*

A. Well, that was something, something that was covered by, you know, our insurance.

Q. The builders risk insurance?

A. Builders risk insurance.

Q. When did you first become aware that the—that Agip had purchased a builders risk insurance policy for this project?

A. In 1992.

Q. And during the period between the time the mudmat problem was noted and the eventual accident, you were aware during that entire period of time that Agip had a builders risk insurance policy covering the jacket. Is that correct?

A. Yes. I was aware that there was builders risk insurance.

■ Additionally, any ambiguity regarding the extent of coverage afforded to Gulf Island under AGIP's policy must be construed in Gulf Island's favor. Under Texas law, when the language in an insurance policy is susceptible to more than one meaning, "the court must adopt the construction that most favors the insured." *Western Heritage Ins. Co. v. Magic Years Learning Ctrs. & Child Care, Inc.*, 45 F.3d 85, 88 (5th Cir. 1995); *National Union Fire Ins. Co.*, 811 S.W.2d at 555; *Barnett*, 723 S.W.2d at 666; *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977). In a case where the dispute involves an exception or limitation on the insurer's liability under the policy, "an even more stringent construction is required." *Barnett*, 723 S.W.2d at 666. An intent to exclude coverage must be expressed by clear and unambiguous language in the policy. *State Farm Fire & Cas. Co.*, 873 S.W.2d at 699; *National Union Fire Ins. Co.*, 811 S.W.2d at 555. Here, Underwriters have not shown their intent to exclude Gulf Island from coverage under the builder's risk

policy in "clear and unambiguous language in the policy" for the period following fabrication and load-out of the jacket. Hence, this time period must be construed as falling within the policy's coverage.

### (5). *Effect of Contractual Coverage Limitations on Right to Subrogation*

■ Underwriters argue, however, that the scope of coverage contained in the contract is limited and permits them to pursue their subrogation claim against Gulf Island, even if it is deemed an "other assured" under the AGIP policy. They rely on an English case, *National Oilwell, Ltd. v. Davy Offshore, Ltd.*, which permits an insurer to bring a subrogation claim against an additional assured for a loss not covered by the policy as to the additional assured, without regard to the policy's waiver of subrogation clause. 2 Lloyd's Rep. 582 (Q.B.1993). The builder's risk policy in *National Oilwell* is similar to the policy at issue in this case. *See id.* at 588–91. The dispute in *National Oilwell* arose over defective parts in a wellhead system for a floating oil production facility. *Id.* at 586. The underwriters of the insured, Davy Offshore, claimed a right of subrogation against National Oilwell, which, in turn, claimed that because it was an additional assured under the insurance policy, the underwriters were precluded from bringing an action against it. *Id.* The court found that National Oilwell was indeed an additional assured and that Underwriters had waived its right of subrogation. *Id.* at 592. The court, however, found that the contract between National Oilwell and Davy Offshore limited the scope of coverage provided to National Oilwell to the period of time prior to the delivery of the wellhead system. *Id.* at 602–04.

The contract provided:

[Davy Offshore] shall on behalf of and in the joint names of the Purchaser and the Oil Field Development Group and [National Oilwell] and all subcontractors insure on an "All Risks" basis the Work and materials in the course of manufacture until the time of delivery in the amount of the Contract Price.

*Id.* at 592. The court held that the insurance policy did not provide coverage to National Oilwell for the loss incurred because it occurred after the delivery of the wellhead system, and, hence, subrogation was permissible. *Id.* at 602.

The Fifth Circuit, however, takes a contrary view. In *Dow Chem. Co. v. M/V Roberta Tabor,* Dow, which had chosen to self-insure, was attempting to recover from the owner of a tug for damages to a barge that was under tow. The insurance provisions in the charter parties for the barge required Dow to obtain hull insurance and protection and indemnity insurance on the barge and to name the tug owner as an additional insured. Alternatively, Dow could self-insure and indemnify the tug owner for any claims that would have been covered by insurance. Dow claimed that it was not precluded by the insurance provisions from recovering against the tug owner for damages to the barge caused by the negligent operation of the tug, which was not to be named in the policy. The court rejected Dow's position, holding that the insurance provisions prevented Dow from suing the owner of the tug for damages to the barge. 815 F.2d at 1043–45. The court found two previous decisions, *Marathon Oil Co. v. Mid–Continent Underwriters* and *Wiley v. Offshore Painting Contractors, Inc.,* to be controlling, stating:

> this argument is foreclosed by recent decisions of this court which hold that an insurer cannot by way of subrogation recover against its insured or an additional assured any part of its payment for a risk covered by the policy.

*Id.* at 1043 (citing *Marathon Oil Co.,* 786 F.2d at 1302; *Wiley,* 716 F.2d at 257).

In *Marathon Oil Co.,* Marathon had chartered a vessel from B & C Boat Rentals under an agreement that required B & C to provide protection and indemnity insurance naming Marathon as an additional assured and waiving subrogation rights against it. 786 F.2d at 1303. The policy included a waiver of subrogation and named Marathon as an additional assured, but only while the vessel was chartered to Marathon and for claims arising out of the operation of the vessel. *Id.* A seaman working aboard the vessel was injured as a result of the negligence of an employee of Marathon, a crane operator aboard a fixed platform. Although the insurance policy covered Marathon for liability incurred as an operator, owner, or charterer, it did not insure Marathon for liability arising in its capacity as platform owner. *Id.* The court determined, however, that waiver of subrogation is not co-extensive with, but is broader than, coverage under the insurance policy. The court held:

> when underwriters issue a policy covering an additional assured and waiving "all subrogation" rights against it, they cannot recoup from the additional assured any portion of the sums they have paid to settle a risk covered by the policy, even on the theory that the recoupment is based on the additional assured's exposure for risks not covered by the policy.

*Id.* at 1302.

In the earlier decision of *Wiley v. Offshore Painting Contractors, Inc.,* the Fifth Circuit had originally held that where insurance policies named Chevron as an additional assured and waived all subrogation rights against Chevron, but only with respect to vessels " 'that may be employed by or actually working for' Chevron," Chevron was covered to the same extent as the principal assured for the operation of the vessel, but not as owner and operator of the platform. 711 F.2d 602, 613–14 (5th Cir.1983). Thus, the waiver of subrogation did not apply to Chevron's negligence while acting as platform owner. *Id.* at 614. On rehearing, however, the court held that because Chevron was an additional assured, and the policy covered a fire loss, whether it resulted from Chevron's ownership or operation of the vessel, the insurer was precluded from recovering against Chevron under the principle that an insurer may not recover from its insured. *Wiley,* 716 F.2d at 257.

Because American admiralty and Texas law govern this issue, *National Oilwell, Ltd.* is not controlling. While the facts of *National Oilwell* may be similar to the present case, this court is bound by Fifth Circuit precedent. *See Jett Racing & Sales, Inc. v. Transamerica Commercial Fin. Corp.,* 892 F.Supp. 161, 163 (S.D.Tex.1995); *Cedillo v.*

*Valcar Enters. & Darling Delaware Co., Inc.,* 773 F.Supp. 932, 936 (N.D.Tex.1991); *B.L. Peregoy v. Amoco Prod. Co.,* 742 F.Supp. 372, 375 (E.D.Tex.1990), *aff'd,* 929 F.2d 196 (5th Cir.), *cert. denied,* 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991). There is ample Fifth Circuit authority holding differently than *National Oilwell,* which this court must follow absent intervening United States Supreme Court or *en banc* Fifth Circuit precedent to the contrary. *See Jones v. Coughlin,* 45 F.3d 677, 679 (2d Cir.1995); *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 988 F.2d 386, 411 n. 25 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 239 (1993).

Here, the jacket, as part of the Grand Isle Block 102 development, was covered under AGIP's policy, which contains a waiver of subrogation rights against all insureds under the policy. Underwriters paid AGIP under the terms of the policy for the damages to the jacket. Therefore, Underwriters may not now recover from Gulf Island, an additional assured, for its payment to AGIP for the jacket, even if Gulf Island were not covered under the policy for the period after fabrication and load-out. Under applicable law, Underwriters are precluded from pursuing their subrogation claim against Gulf Island without regard to the scope of the underlying insurance coverage afforded to Gulf Island under the policy.

### 3. *Conclusion*

Gulf Island is an additional assured under the builder's risk policy issued to AGIP, which contains a waiver of subrogation against all insureds. Therefore, Underwriters may not assert any right to subrogation against Gulf Island for damage to the jacket. Because no outstanding issues of material fact exist, Gulf Island's motion for summary judgment should be granted. Underwriters' cross-motion for partial summary judgment should be denied.

The parties have ten days from receipt to file specific, written objections to the memorandum and recommendation. Fed.R.Civ.P. 72. Failure to file objections may bar an attack on the factual findings on appeal. The original of written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208–1010. Copies of the objections must be mailed to the opposing party and to the chambers of the magistrate judge, P.O. Box 610070, Houston, Texas 77208–0070.

Signed at Houston, Texas, on <u>January 16</u>, 1996.